**Gail H. MOORE, Plaintiff–Appellant,**

v.

**SKY CHEFS, INC., Defendant–Appellee.**

No. 02–1886.

United States Court of Appeals, Sixth Circuit.

Oct. 23, 2003.

Before NELSON, GIBBONS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Gail Moore appeals from a judgment rejecting her contract and tort claims against Sky Chefs, Inc. as a matter of law. Sky Chefs maintains a catering agreement with Northwest Airlines, for whom Moore works as a flight attendant. According to Moore, Sky Chefs failed to secure a food-service cart before one of her flights, the cart rolled out from under the galley cabinet when the aircraft started to climb, and the cart injured her when it ran into her hand and wrist. In the ensuing lawsuit, Moore claimed that Sky Chefs violated a contractual duty to lock the food-service cart and, in the alternative, claimed that Sky Chefs violated a duty imposed by Michigan tort law to exercise reasonable care. Because we conclude that the contract did not impose any such duty and because we conclude that Michigan tort law does not impose such a duty when regulations of the Federal Aviation Administration independently require airlines like Northwest to lock food carts, we AFFIRM.

## I. BACKGROUND

A Detroit-based flight attendant for Northwest Airlines, Moore has been employed by the airline for sixteen years. On October 29, 1999, she was working on Flight 580, which travels from Phoenix, Arizona to Minneapolis–St. Paul, Minnesota. After the plane had appeared to level off and after Moore had pulled a beverage cart from the aircraft galley to prepare the in-flight food and beverage service, the aircraft suddenly began to climb. The abrupt altitude change caused a food-service cart, located immediately behind the beverage cart (carts are placed two-deep in the aircraft galley), to dislodge, roll forward and pinch Moore's hand and wrist against the galley counter.

Sky Chefs is a food service company that provides catering services to airlines, including Northwest. Under the catering agreement between Sky Chefs and Northwest, Sky Chefs prepares food and beverages for airline flights, loads them into and on food-service and beverage carts owned by Northwest, and places the full carts inside the airplane cabin before each flight. JA at 19–20. Aircraft food-service and beverage carts contain locking devices, which prevent them from rolling forward during flight.

In Moore's view, Sky Chefs' employees failed to lock the food-service cart that pinched her hand and wrist during Flight 580. Because she believed that Sky Chefs had a duty to lock the food-service carts either under the contract with Northwest or under Michigan tort law, she sued the catering company in Michigan state court, seeking compensation for her injuries.

After removing the action to federal court on diversity grounds, Sky Chefs moved for summary judgment. In granting the motion, the district court first concluded that the contract did not impose a duty on Sky Chefs to secure the food-service and beverage carts in the aircraft galley. It then concluded that Michigan tort law did not independently impose any such duty on the catering company. This appeal followed.

## II. DISCUSSION

The customary rules for reviewing a summary-judgment decision apply. We give *de novo* review to the district court's decision. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir.2002). A decision granting summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). And in considering such motions, we give all reasonable factual in-

ferences to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Our jurisdiction over these state-law claims rests on the diversity of citizenship of the parties. Moore is a citizen of the State of Michigan. Northwest is incorporated in the State of Texas, which also is its principal place of business. *See* 28 U.S.C. § 1332. In this setting, we effectively sit as a court of the forum state—in this case Michigan—and therefore apply Michigan choice-of-law rules. *See Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir.1999). As the parties correctly agree, those choice-of-law rules indicate that Michigan substantive law governs these claim.

## A. The Contract Claim.

### 1. Section 22.1 of the Contract.

██ Moore initially asserts that the contract imposed a duty on Sky Chefs to lock the food-service carts because it incorporates a requirement imposed by the Federal Aviation Administration (FAA) on the airlines to do so. Under section 22.1 of the contract, Sky Chefs must

> comply with *all applicable* laws, regulations, policies and procedures of entities which include, but are not limited to, the following: federal, state, local, airport authority, Food and Drug Administration (FDA) or equivalent local authorities for international locations, *Federal Aviation Administration (FAA)* whichever is more stringent in performing the Catering Services, during procurement, manufacturing, processing, storing, transporting, disposing, recycling, testing, reporting as they relate to the Goods and/or Services contemplated by this Agreement.

Agreement § 22.1; JA at 66 (emphasis added). Invoking this provision, Moore claims that the contract requires Sky Chefs to assume Northwest's obligations under two FAA regulations. One regulation states that "the [air carrier] must provide and use means to prevent each item of galley equipment and each serving cart, when not in use, ... from becoming a hazard." 14 C.F.R. § 121.576. The other regulation states that "[n]o [air carrier] may permit an airplane to move on the surface, take off, or land unless each passenger serving cart is secured in its stowed position." *Id.* § 121.577(c).

Like the district court before us, we do not agree with Moore's reading of the contract. Even assuming that the FAA permits airlines to delegate their responsibility under the agency's safety rules, a doubtful proposition, the contract does not impose this requirement on Sky Chefs. It says only that the caterer must "comply with all *applicable* laws," a general provision that is most sensibly read to cover laws that by their terms apply to *caterers*. Here, however, the FAA regulations at issue apply by their terms to airlines, not catering companies. We agree with the district court that this provision of the agreement does not support Moore's contract claim.

### 2. Other Contract Provisions.

██ Moore does not fare any better in relying on other provisions of the agreement to support her contract claim. She points for example to a provision that requires Sky Chefs to reimburse Northwest for any property damage to the aircraft caused by the catering company. *See* Agreement § 1.1; JA at 60. But this provision by its terms applies only when the catering company (or its employees) cause damage to the aircraft or its equipment while loading the aircraft with food and

beverages. Nothing of that sort happened here.

■ Also unavailing is the other contract provision that Moore invokes. It says that Sky Chefs must inspect Northwest's food-service and beverage carts before loading them to assure that they meet safety and operational requirements. Agreement § 1.9; JA at 65. This provision might well require Sky Chefs to ensure that the locking devices on the carts worked. But it does not make the company responsible for ensuring that the carts are locked before take-off. So far as these provisions are concerned and so far as the contract in general is concerned, Sky Chefs' duties ended once it had loaded the food-service and beverage carts on the plane.

### B. Moore's Tort Claims.

■ In the alternative, Moore argues that Michigan common law imposes a legal duty on Sky Chefs to perform the contract with reasonable care, and that Sky Chefs acted negligently when its employees failed to lock the food-service cart. In response, Sky Chefs argues that if this detailed contract does not impose a duty to lock the safety carts on the company, then Michigan tort law may not do so. While we agree with Moore that the contract and tort claims are not mutually exclusive, her tort claim fails as a matter of law because she has not shown that Sky Chefs violated any duty to exercise reasonable care imposed by Michigan law.

### 1. Under Michigan Law, An Individual May Bring a Tort Claim for Failure to Perform a Contract with Reasonable Care.

Under Michigan common law, the parties to a contract must not only perform in accordance with the express provisions of the agreement but also must perform their obligations with reasonable care. "[A]s an essential element of actionable negligence," the Michigan Supreme Court has observed, the duty of reasonable care.

> may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract.

*Clark v. Dalman,* 379 Mich. 251, 150 N.W.2d 755, 760 (1967).

To similar effect, § 324A of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). In interpreting Michigan tort law, the Michigan courts have followed this provision. *See Schanz v. N.H. Ins. Co.,* 165 Mich.App. 395, 418 N.W.2d 478, 482 (1988); *Tucker v. Sandlin,* 126 Mich.App. 701, 337 N.W.2d 637, 639–40 (1983).

Negligent conduct in performing a contract thus "subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things." *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.,* 454 Mich. 65, 559 N.W.2d 647, 658

(1997). For "there is a duty to exercise reasonable care in how one acts.... Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there is a preexisting obligation or duty to avoid harm when one acts." *Id.* In accordance with these precedents, then, Sky Chefs had a general duty (beyond the contract's express provisions) to act with reasonable care in performing this catering contract.

### 2. Moore's Tort Claim Fails as a Matter of Law.

It is one thing, however, to say that this contract does not preclude Moore from bringing an independent tort claim. It is another to say that Moore has filed a cognizable tort claim that should have been presented to a jury. She has not done so.

Just as Moore has failed to establish that the contract imposed a duty on Sky Chefs to lock the food-service carts, she has failed to show that Michigan common law imposes such a duty. Whether a duty exists of course depends on familiar tort principles–namely, whether it was foreseeable that Sky Chefs' failure to lock the cart would create a meaningful risk of harm and whether the result of that conduct and any intervening causes were foreseeable. *See McMillan v. Mich. State Highway Comm'n,* 426 Mich. 46, 393 N.W.2d 332, 338–39 (1986). In this sense, foreseeability

> depends upon whether or not a reasonable man could anticipate that a given event might occur under certain conditions.... The event which he perceives might occur must pose some sort of risk of injury to another person or his property before the actor may be required to act. Also, to require the actor to act, *some sort of relationship* must exist between the actor and the other party which the law or society views as sufficiently strong to require more than

mere observation of the events which unfold on the part of the defendant. *Samson v. Saginaw Prof'l Bldg., Inc.,* 393 Mich. 393, 224 N.W.2d 843, 849 (1975) (emphasis added).

Moore argues that such a relationship exists in the present case, because Sky Chefs " 'had knowledge or special reason to know of the consequences of [the] tortious conduct in terms of the persons likely to be victimized and the nature of the damages likely to be suffered,' when the unsecured cart went rolling while the plane was in flight." App. Br. at 22–23 (quoting *Cargill v. Boag Cold Storage Warehouse, Inc.,* 71 F.3d 545, 549 (6th Cir.1995)). *See also Am. & Foreign Ins. Co. v. Bolt,* 106 F.3d 155, 158 (6th Cir. 1997) (reinstating a jury verdict against a contractor who constructed a warehouse addition which collapsed under "snow load," because the law imposes "an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty action lies"). As in these cases, Moore claims that Sky Chefs had reason to know that the Northwest flight attendants would be injured if the catering company's employees did not lock the food-service carts.

We disagree. The FAA regulations imposed a duty on Northwest and its flight attendants to lock both types of carts—the beverage carts (in the front of the galley) and the food-service carts (in the back of the galley). *See* 14 C.F.R. §§ 121.576–.577. That duty not only applied before the flight took off but also applied during the flight. *Id.* Under these circumstances, it is difficult to imagine *any* risk of harm caused by the failure of Sky Chefs to lock the carts. Sky Chefs' duties under the contract had ended once the carts were placed on the aircraft. And, at that point, it had every reason to believe that North-

west would perform its duty of locking the carts before, during, indeed throughout, the flight.

We might look at this claim differently if Moore had shown that Sky Chefs knew that Northwest flight attendants frequently did not lock the carts before take-off and knew that this failure to follow the FAA regulations had caused injuries to flight attendants and others. No such evidence has been presented, however.

In her deposition, Moore merely testified that she knew "flight attendants who know flight attendants that got injured" from unlocked food-service and beverage carts. JA at 146. During her sixteen years as a flight attendant, she added that she remembered seeing "a dozen or more" flight attendants sustain injuries from food-service or beverage carts that were not properly locked. JA at 147–48. Yet, when pressed for details, she could produce neither the names of the individuals involved in those accidents nor specific information pertaining to the accidents themselves—including most notably whether the accidents occurred after the flight attendants had already moved the food-service and beverage carts from the galley. JA at 145–48. Nor could she name anyone who might have complained to Northwest or Sky Chefs about the cart locking system or whether she ever complained to either one before her injury. *Id.* These anecdotes, scant in detail and overly generalized in content, do not suffice to impose a cognizable duty on Sky Chefs.

No more illuminating is the only other evidence presented to support this tort duty—the testimony of Denise Bryson, a flight attendant on Flight 580, who witnesses Moore's accident. In her deposition, Bryson testified that Northwest's standard operating procedure required flight attendants to mark defective food-service and beverage carts for removal from the aircraft upon landing. JA at 190. She did not recall that the food-service cart at issue on Flight 580 was marked for removal in Minneapolis–St. Paul, however. *Id.* She also testified that on multiple occasions, in multiple cities (including Phoenix), she had complained to Sky Chefs personnel—"the manager once ... [and] the guys themselves that bring the carts on"—that they did not lock the brakes when placing food-service and beverage carts in the aircraft galley. JA at 192. Nothing in Bryson's testimony, however, links these complaints to actual flight attendant injuries or any other risk, and nowhere does Bryson say that she and other flight attendants were not locking the carts and that they told Sky Chefs of this fact. As is, the testimony simply represents a purported request that Sky Chefs perform *her* duties in locking the carts before take-off. The testimony in no way put Sky Chefs on notice that a failure to lock the brakes would create a foreseeable risk of harm to flight attendants or anyone else.

Moore also suggests that Sky Chefs' standard operating procedure required its employees to lock the food-service and beverage carts before take-off and claims that this procedure shows that Sky Chefs recognized the risk of not locking the carts. Even assuming for the sake of argument that Sky Chefs' decision to lock the carts as a matter of precaution could create a tort duty to do so, a review of the cited manual confirms that it requires employees to lock the carts when they transport food and beverages *to* the plane, not when they load the items *on* the plane. JA at 181.

Finally, Moore cites a series of Michigan cases to support her argument. The cases, however, are all quite inapposite. They merely stand for the principle that the failure to satisfy a contractual obligation may also be vindicated through a

tort action. *See Courtright v. Design Irrigation, Inc.,* 210 Mich.App. 528, 534 N.W.2d 181, 182–83 (1995) (tort claim arose from defendant's failure to satisfy its obligation under the contract to drain a sprinkler system and prepare it for winter); *Talucci v. Archambault,* 20 Mich. App. 153, 173 N.W.2d 740, 743–44 (1969) (tort claim arose when defendant failed to perform contractual duty to remove snow and ice from the entryway to the landowner's building, and plaintiff was injured); *Osman v. Summer Green Lawn Care, Inc.,* 209 Mich.App. 703, 532 N.W.2d 186, 189–90 (1995) (same). As shown, no contractual violation occurred here.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.