STRANCH, Circuit Judge,
dissenting.
To uphold the dismissal of this negligence claim, we must conclude that construing the complaint in the light most favorable to Ram and accepting all of Ram’s allegations as true, ADT is not even plausibly liable for the misconduct alleged. See Keys v. Humana, Inc., 684 F.3d 605, 608 (6th Cir.2012). The majority finds this standard satisfied by holding that, as a matter of Michigan law, a party to a contract can never be negligent when performing its contractual obligations because no legal duty guides or confines the contracting party’s actions. The operative determination of the majority is that when a *504 plaintiff has “contracted directly with the alleged tortfeasor,” no common law duty exists. But we have already held otherwise: “[u]nder Michigan common law, the parties to a contract must not only perform in accordance with the express provisions of the agreement but must also perform their obligations with reasonable care.” Moore v. Sky Chefs, Inc., 79 Fed.Appx. 130, 134 (6th Cir.2003). More than one hundred years of Michigan caselaw contradicts the majority’s conclusion that no duty to perform a contract with due care can exist. As does the common law across the states in this circuit and across the country.[1] And as does hornbook law.[2] Therefore, I respectfully dissent.
I begin with the clear consensus in Michigan law recognizing the existence of such a duty. In Chase v. Clinton County, a suit between the parties to a contract that also involved a tort claim, the Michigan Supreme Court stated: “Accompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract.” 241 Mich. 478, 217 N.W. 565, 567 (1928) (quotation omitted). In Hart v. Ludwig, which also involved a negligence claim between the parties to a contract, the Michigan Supreme Court stated as “correct” the principle that “[t]he law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies.” 347 Mich. 559, 79 N.W.2d 895, 898 (1956) (quotation omitted).
Chase and Hart are notable because they are especially quotable (and rather frequently quoted), not because they stand alone — they are in crowded company. This duty to exercise due care in one’s contractual undertakings did not spring into existence in 1928. Smith v. Holmes, 54 Mich. 104, 19 N.W. 767 (1884), involved a suit between the parties to a contract that included a tort claim arising out of the contract. In Smith, the Michigan Supreme Court stated, “[a]t all events, if he entered into a contract with the plaintiff ... then the law implied an undertaking from him ... and that he would use due and ordinary care in the performance of his duty to the plaintiff in that respect.” 19 N.W. at 769. Nor did the duty disappear after 1956. Just last year, the Michigan Supreme Court stated that “[e]very person engaged in the performance of an undertaking has a duty to use due care.” Hill v. Sears, Roebuck and Co., 492 Mich. 651, 822 N.W.2d 190,196 (2012). Hill, too, involved a tort claim arising from a contractual relationship brought by one contracting party against the other.
These cases fall within the “traditional rule” that “privity of contract is required *505 before a cause of action in tort can arise from a breach of duty existing by virtue of contract.” 57A Am.Jur.2d Negligence § 114. The confusion surrounding this principle in the majority opinion appears to grow from the rule in Michigan that a third party in some cases also has a cause of action arising out of a contracting party’s negligent performance of her contractual duties. See, e.g., Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C., 489 Mich. 157, 809 N.W.2d 553, 562 (2011). It should not be surprising that the duty to use due care in one’s undertakings applies in the third-party context as well. See, e.g., id. at 560 (“As this Court has historically recognized, a separate and distinct duty to support a cause of action in tort can arise by ... the generally recognized common-law duty to use due care in undertakings.”); Fultz v. Union-Commerce Assocs., 683 N.W.2d 587, 591 (“If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner.”); Clark v. Dalman, 379 Mich. 251, 150 N.W.2d 755, 760 (1967) (noting “the basic rule of common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care”). Note the uncanny similarity between the duty described in the third-party cases and the duty described in the first-party cases: it is the same duty.
The problem here is that the majority’s position turns this traditional rule on its head and presumes that the duty of due care only exists when one party is a stranger to the contract — that somehow the contracting party enjoys less protection than a stranger to the contract. Thus, the majority faults Ram for citing to the third-party cases but then relies almost entirely on them to negate Ram’s first-party claim. I agree that the third-party cases include a distinguishing factor — a third party — but that does not render the cases inapplicable. The third-party cases are on point because they, like every Michigan case in this arena, recognize “the basic rule of common law which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care.” Loweke, 809 N.W.2d at 558 (emphasis added).
The opinions of the Michigan Supreme Court should suffice to show that this duty existed and continues to exist. But to be thorough, I note that the Michigan Court of Appeals has also repeatedly recognized this duty in both the first-party and third-party contexts. See, e.g., Courtright v. Design Irrigation, Inc., 210 Mich.App. 528, 534 N.W.2d 181, 182 (1995) (“While performing a contract, a party owes a separate, general duty to perform with due care so as not to injure another. Breach of this duty may give rise to tort liability.”); Osman v. Summer Green Lawn Care, Inc., 209 Mich.App. 703, 532 N.W.2d 186, 188 (1995) (“[t]hose foreseeably injured by the negligent performance of a contractual undertaking are owed a duty of care”) overruled on other grounds by Smith v. Globe Life Ins. Co., 460 Mich. 446, 597 N.W.2d 28 (1999); Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc., 212 Mich.App. 522, 538 N.W.2d 424, 428 (1995) (“The duty arising is that which accompanies every contract: a common-law duty to perform with ordinary care the thing agreed to be done.”); Nelson v. Northwestern Sav. and Loan Ass’n, 146 Mich.App. 505, 381 N.W.2d 757, 759 (1985) (“every contractual undertaking is accompanied by a common law duty to use ordinary care in the performance of the task undertaken”); Challenge Mach. Co. v. Mattison Mach. Works, 138 Mich.App. 15, 359 N.W.2d 232, 237-38 (1984) (“Negligent performance of an undertaking, even though grounded upon a contractual rela *506 tionship, may constitute an actionable tort as well as breach of contract.”); Nicholson v. Han, 12 Mich.App. 35, 162 N.W.2d 313, 317 n. 5 (1968) (“The negligent breach of a contract involving misfeasance gives rise to an action for tort.”).
And so has this circuit. See, e.g., Cleveland Indians Baseball Co., L.P. v. N.H. Ins. Co., 727 F.3d 633, 638-39 (6th Cir.2013) (“Specifically, a contracting party owes a separate and distinct common law duty of care to all those whom the party knew or reasonably should have foreseen would be injured by the party’s negligent acts or omissions”) (citing Hill, 822 N.W.2d at 196-98) (emphasis added); Tompkins v. Crown Corr, Inc., 726 F.3d 830, 840 (6th Cir.2013) (quoting Loweke, 809 N.W.2d at 562, for the proposition that “[a] defendant — by performing an act under the contract — was not relieved of its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings”); Moore, 79 Fed.Appx. at 134; Am. and Foreign Ins. Co. v. Bolt, 106 F.3d 155, 158 (6th Cir.1997) (“Thus, the liability imposed turns on the defendant’s failure to exercise skill and care in the performance of his work as required, independent of the contractual requirements undertaken, by this additional duty of care.”); Cargill, Inc. v. Boag Cold Storage Warehouse, Inc., 71 F.3d 545, 550 n. 1 (6th Cir.1995); Stiver v. Parker, 975 F.2d 261, 271 & n. 17 (6th Cir.1992).
In sum, the duty to use due care in one’s contractual undertakings does exist and has existed in Michigan for over one hundred years. We have recognized it, and it is hornbook law. It appears that the majority finds otherwise by falling prey to a recognized analytical error. “[Ijnstead of asking if there was an independent tort duty,” as Michigan common law instructs, the majority erroneously “ask[s] if the situation, or the injury, could have arisen independently of the existence of the contract.” Vincent A. Wellman, Assessing the Economic Loss Doctrine in Michigan: Making Sense Out of the Development of Law, 54 Wayne L.Rev. 791, 798 n. 34 (2008). This error is common enough to be noticed. See Dobbs’ Law of Torts § 410 & n. 1 (noting that although a tort duty “may ... arise from voluntary contracts,” “courts occasionally overlook or ignore the point and insist that an undertaking would be actionable only ‘in contract’ if it is actionable at all”). It has even been named by one commentator — it is the “sine qua non” error. See Wellman, 54 Wayne L.Rev. at 798 n. 34.
The majority opinion provides a textbook (or hornbook) example of this error: “ADT did not owe Ram a statutory or common-law duty to detect the burglary or dispatch the police.” True enough. But the law imposed on ADT a separate and distinct duty to use due care in rendering the services it contracted to provide. The law did not require ADT to protect Ram’s jewelry store — the law did not force ADT to contract with Ram, nor did it force ADT to provide certain services to Ram. But once ADT decided on this undertaking, the law imposed a duty of ordinary care in its prosecution. That duty existed independently of the contract; it would exist even if ADT had acted only out of the goodness of its heart. As a result, ADT could have breached the contract without violating the separate tort duty — it could have, for example, notified Ram that it would cease providing services but would not refund Ram any money — and it could have violated the tort duty without breaching the contract (no provision of which requires ADT to exercise due care). But the majority concludes that because the contractual relationship gave rise to the tort (the “sine qua non”), there can be no tort at all. Put another way, the majority concludes *507 that the existence of the contract somehow nullifies the duty to use due care when performing the contract. But the Michigan Supreme Court has made clear that “the existence of a contract ... does not extinguish duties of care otherwise existing.” Loweke, 809 N.W.2d at 561 (quotations omitted). Thus, the majority’s conclusion conflicts with Michigan law, see, e.g., Courtright, 534 N.W.2d at 182 (“While performing a contract, a party owes a separate, general duty to perform with due care so as not to injure another. Breach of this duty may give rise to tort liability”), and with the basic principle that in Michigan “[t]he right to be compensated for injuries due to the negligence of another is well settled,” Cleveland Indians, 727 F.3d at 639 n. 6. See also In re Bradley Estate, 494 Mich. 367, 835 N.W.2d 545, 554 (2013) (“as this Court has repeatedly recognized [for] nearly one hundred years ..., when a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort”).
The confusion here lies between facts and law. It is true that the duty must be independent of the contract — that is, it must exist by operation of law — but the facts that give rise to the breach of that duty need not. See, e.g., Loweke, 809 N.W.2d at 559 (“Courts have ... erroneously focus[ed] on whether a defendant’s conduct was separate and distinct from the obligations required by the contract or whether the hazard was a subject of or contemplated by the contract.”); Clark, 150 N.W.2d at 760 (“the contract merely creates the state of things which furnishes the occasion of the tort”); Churchill v. Howe, 186 Mich. 107, 152 N.W. 989, 990 (1915) (“And yet it is conceded that a tort may grow out of, or make part of, or be coincident with, a contract, and that precisely the same state of facts, between the same parties, may admit of an action either ex contractu or ex delicto.”); Oliver v. Perkins, 92 Mich. 304, 52 N.W. 609, 612 (1892) (“The duty and the tort grow out of the entire range of facts of which the breach of contract was but one.”).
Spengler v. ADT Security Services, Inc., 505 F.3d 456 (6th Cir.2007), also provides an example of the sine qua non error. In Spengler, the plaintiffs mother, whose cancer had rendered her unable to speak, pressed an emergency call button provided by ADT. But ADT gave EMS the wrong address and the mother died. Nonetheless, this court summarily concluded that “ADT’s obligation to promptly and correctly dispatch EMS emanated only from the contract ... and thus no tort claim is available.” Id. at 458. The leading torts treatise specifically criticizes Spengler for “overlooking] and ignoring]” the principle that a tort duty “may ... arise from voluntary contracts.” Dobbs’ Law of Torts § 410 & n. 1.
Spengler failed to address the specific issue here — Michigan’s duty of due care in one’s undertakings. Nor can the case be read to establish some sort of per se rule of tort immunity for security system companies. Michigan has no such rule. See S & M Golden Inc. v. Alarm Mgmt. II, L.L.C., 2006 WL 141847 (Mich.Ct.App. Jan. 19, 2006), at *2 (“[d]efendant [alarm company] was clearly negligent”). And Spengler, of course, cannot be read to eliminate “the ‘basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care.’ ” Loweke 809 N.W.2d at 558 (quoting Clark, 150 N.W.2d at 760). Federal courts cannot make state law. Nor can the case be read to conflict with this circuit’s prior precedent that in Michigan “the law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has *508 undertaken, for nonperformance of which duty action lies.” Bolt, 106 F.3d at 158. Of course, Bolt, the published decision issued before Spengler, controls. See Rutherford v. Columbia Gas, 575 F.3d 616, 619 (6th Cir.2009). Our choices, then, are either to confine Spengler to its unique facts or frankly acknowledge that the case was wrongly reasoned and in conflict with our existing precedent in Bolt. To paraphrase Justice Jackson, there is no reason why we should be consciously wrong today simply becausé we were unconsciously -wrong in Spengler. See Mass. v. United States, 333 U.S. 611, 640, 68 S.Ct. 747, 92 L.Ed. 968 (1948) (Jackson, J., dissenting).
And as this case illustrates, no dire consequences await if we honor Michigan’s determination that “[a]ccompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill,, reasonable expediency, and faithfulness, and a- negligent failure to observe any of these conditions is a tort, as well as a breach of contract.” Chase, 217 N.W. at 567 (quotation omitted). In Michigan parties can contract to limit the scope of their liability for ordinary negligence by capping damages at a fixed amount, which is precisely what Ram and ADT did here. See, e.g., Lamp v. Reynolds, 249 Mich.App. 591, 645 N.W.2d 311, 314 (2002). Michigan’s rule anticipates contracting parties can and will protect themselves from ordinary negligence claims by contractually limiting damages. This rule addresses any concern over uncontrolled liability. But acknowledgment of this rule reveals a further conceptual problem with the majority’s holding and its reading of Spengler. Michigan’s rule (and contractual provisions based upon it) would be superfluous if one contracting party did not owe the other a general duty of care in the performance of her contracted-for undertaking. No party would need to limit liability for ordinary negligence if negligence is something for which a party cannot be liable.
Perhaps more important to Michigan law is its determination that, in contrast to ordinary negligence, parties cannot contractually limit liability for gross negligence. See, e.g., id. Gross negligence, like ordinary negligence, requires a breach of a legal duty. See Maiden v. Rozwood, 461 Mich. 109, 597 N.W.2d 817, 831 (1999). Eliminating the “separate, general duty to perform with due care” would thus also eliminate the possibility that a contracting party could be liable for gross negligence. Under the majority’s holding, a contracting party could be grossly and willfully negligent with impunity. That does not comport with Michigan law or with the balance of interests Michigan effectuates through its laws. I would therefore continue to recognize the existence of a duty and harmonize this case with the law and underlying policy long in effect in Michigan that a party (1) may be liable in tort for not performing its contractual obligations with due care; and (2) may contractually limit the scope of liability for ordinary negligence; (3) but cannot contractually limit liability for gross negligence.
Turning to the application of Michigan’s law to the case at hand, Ram has alleged a plausible negligence claim. This case arose from a motion to dismiss and so we must “accept all allegations as true.” Keys, 684 F.3d at 608. From the complaint, we know that ADT was engaged in the performance of an undertaking: To provide security services for Ram. Somehow, even though ADT received at least two alarm signals, including a “burglary in progress” alarm, ADT did nothing. ADT did not notify the police. ADT did not notify Ram, perhaps in part because it had improperly installed the alarm system. These allegations are sufficient to state a *509 claim for negligence and to withstand a motion to dismiss.
In sum: (1) by operation of law, ADT owed Ram a duty of due care when it undertook to provide it security services, see, e.g., Hill, 822 N.W.2d at 196; (2) this duty, because it was imposed by operation of law, was “separate and distinct” from ADT’s contractual obligations, see, e.g., Loweke, 809 N.W.2d at 558; (3) and ADT plausibly breached that duty when it utterly failed to respond to the alarm signals that indicated Ram’s store was being burglarized, see S & M Golden Inc. v. Alarm Mgmt. II, L.L.C., 2006 WL 141847, at *2 (Mich.Ct.App. Jan. 19, 2006). Ram’s negligence claim should survive a motion to dismiss. Because the majority concludes otherwise, I respectfully dissent.

. See, e.g., Mead Corp. v. ABB Power Generation, Inc., 319 F.3d 790, 795 (6th Cir.2003) ("Under Ohio law, ‘[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.'") (quoting Hunsicker v. Buckeye Union Cas. Co., 95 Ohio App. 241, 118 N.E.2d 922, 924 (1953)); Federal Ins. Co. v. Winters, 354 S.W.3d 287, 292 (Tenn.2011) (quoting nearly identical language and citing cases from multiple jurisdictions); Sparks v. Re/Max Allstar Realty, Inc., 55 S.W.3d 343, 346-47 (Ky.Ct.App.2000).

. Recognizing that a contractual undertaking may also include a duty to exercise reasonable care that gives rise to a tort action. See 57A Am.Jur.2d Negligence § 110; Dobbs’ Law of Torts § 410 (2d ed.); Restatement (Second) of Torts § 323.