## CHURCHILL v. HOWE.

1. PLEADING — DECLARATION — JOINDER — ASSUMPSIT — TORT — ACTIONS.

Three counts of plaintiff's declaration charging that defendant, intending to defraud plaintiff out of certain moneys which were due to him from a purchaser of certain lands theretofore sold by said defendant, caused a deed to be placed in plaintiff's hands in escrow authorizing plaintiff to collect the same and reimburse himself for moneys advanced to defendant, and that defendant fraudulently procured the said purchase price to be paid to him, in substance sounded in tort and might not improperly be joined with a count in trover for the conversion of said funds.

2. SAME—CONTRACT—FRAUD.

The wrong charged in the declaration was more than a mere failure to perform the contract, and amounted to an affirmative malfeasance; the collection by fraud and deceit of funds which belonged lawfully to the plaintiff. The fact that the contract was pleaded did not change the gist of the action so as to render the counts assumpsit instead of tort.

3. SAME—TORTS—ASSUMPSIT—FRAUD—MISJOINDER.

Although an express contract exists between plaintiff and defendant, if a common law duty results from the contract and surrounding circumstances, the violation of

such obligation authorizes plaintiff to bring an action in tort for the neglect or misfeasance; and either an action *ex contractu* or one sounding in tort may be maintained upon the same state of facts.

Certiorari to Emmet; Shepherd, J. Submitted January 11, 1915. (Docket No. 65.) Decided June 7, 1915.

Case by Charles L. Churchill against George Howe for conversion of funds belonging to plaintiff. An order was entered overruling a demurrer to plaintiff's declaration. Defendant brings error. Affirmed.

*Halstead & Halstead*, for .appellant.
*A. S. Hinds*, for appellee.

STEERE, J. The subject-matter of the present contention was before this court on an appeal of a chancery suit entitled *Churchill* v. *Howe*, reported in 180 Mich. 150 (146 N. W. 623), wherein plaintiff sought to impress with a trust certain real estate, owned by defendant and his wife as tenants by entireties, on the ground that money borrowed by defendant from the Churchill & Webber Bank and invested in other land, which was exchanged for that upon which a lien was asserted, had been fraudulently invested and sequestered from reach of execution. In that suit a demurrer to complainant's bill was sustained, for the reason that under the facts stated in said bill defendants were not shown to have committed any fraud nor violated any trust at the time the money was borrowed and the land in question purchased; although the view was expressed that defendant's subsequent conduct in relation to the matter was dishonest and fraudulent. Plaintiff thereafter commenced this action at law, filing a declaration in a plea of trespass upon the case, containing three counts, to which de-

fendant also demurred. His demurrer having been overruled, he now brings the proceedings to this court for review on a writ of certiorari under Act No. 310, Pub. Acts 1905.

The story of defendant's alleged dishonesty is substantially the same in both the bill of complaint in the chancery suit and the declaration in this action at law. In brief, it is charged that he left with the Churchill & Webber Bank, of which plaintiff is the surviving partner, a deed in escrow for delivery to the grantee named therein on payment to the bank of a stated amount, and induced it to advance to him thereon $750, to be refunded out of the money it was authorized to collect on delivery of the escrow deed, after which he proceeded to himself surreptitiously and fraudulently collect from the grantee and appropriate the money due upon the escrow deed, wrongfully, and with intent to defraud, converting the same to his own use.

Defendant's grounds of demurrer are, in brief, that the first count of plaintiff's declaration states a cause of action, if any, arising *ex delicto,* and the second and third counts state a cause of action, if any, arising *ex contractu,* while causes of action sounding in tort and on contract cannot be joined in one declaration. Of the three counts, the first is the ordinary, short form of a count in trover; the other two state in substance, with some variations in phraseology and more at length than need be given here, that defendant sold certain real estate to one Jackson, who, after making part payment thereon, refused to pay the whole of the purchase price until certain defects in the title were remedied, and defendant thereupon solicited plaintiff's bank to assist him by a loan of $750 to be repaid from a balance of $1,123.25 coming from Jackson, which he authorized the bank to collect, delivering to it in escrow a deed of the land sold to Jack-

son, to be delivered to him on payment to the bank of that sum; that the $750 was advanced to defendant in pursuance of and reliance upon an understanding and agreement that the bank should collect said unpaid balance due upon the deed delivered to it in escrow and retain therefrom the amount it had advanced to defendant; but that:

"Thereupon the said defendant cunningly, wickedly, and maliciously, and with the intent and purpose to defraud said Churchill & Webber of said $750, and intending to cheat said Churchill & Webber out of said sum so advanced to him, began urging the said John W. Jackson to pay the balance of the moneys remaining unpaid directly to him, the said defendant, and that in response to such urgings so made by said defendant, the said John W. Jackson did, on, to wit, February 2, 1909, send his check to the said defendant for the sum of $900, and that said defendant did, on, to wit, the 5th day of February, 1909, obtain the cash upon said check, well knowing that $750 thereof belonged to and was the absolute property of the said Churchill & Webber; * * * and that by reason of the premises the said defendant has cunningly, craftily, wickedly, and maliciously, and with the intent to injure said Churchill & Webber, cheated and defrauded the said Churchill & Webber and this plaintiff, of said sum of $750, less the sum of $133.45, which said Churchill & Webber afterwards succeeded in obtaining from said John W. Jackson upon said escrow deed; * * * and that the said defendant fraudulently, and with the intent and purpose to cheat and defraud said Churchill & Webber, induced said Jackson to pay such sum of $900 directly to said defendant; and that said conduct on the part of said defendant did cheat and defraud said Churchill & Webber out of said net sum of $616.65, and the interest thereon," etc.

The chief difference between the second and third counts is that the latter omits details of the manner in which defendant obtained the money from Jackson, and charges that:

"On, to wit, the 5th day of February, 1909, the said defendant came into possession of the sum of $900, which sum of $900 the said John W. Jackson paid directly to said defendant, and that the said defendant accepted and received said money from the said John W. Jackson, well knowing that $750 thereof was the absolute property of said Churchill & Webber, and that it was his duty to at once deliver said sum of $750 so advanced to him back to said Churchill & Webber out of said receipts of $900, but that the said defendant, notwithstanding his duty in that regard, fraudulently, and with the intent and purpose to defraud said Churchill & Webber out of the same, wrongfully embezzled the same, and converted the same to his own use, * * * by reason of his conduct in the premises has wilfully, knowingly, wrongfully, deceitfully, unlawfully, cunningly, and craftily cheated and defrauded said Churchill & Webber and this plaintiff out of said sum, together with the interest thereon."

That the first count sounds in tort and is a good count under a plea of trespass upon the case, standing alone, cannot be questioned; but it is urged that the other counts are confessedly a bill of particulars of the first, in effect, and clearly state nothing beyond contractual obligations for which only an action in assumpsit will lie.

It is urged for defendant that the facts stated show, undisputed, that all rights granted and obligations assumed between these parties grew out of their contract relations, and if the allegations as to their contract were stricken out no ground of action would remain; the distinguishing feature of a tort being that it consists in the violation of a right given or neglect of a duty imposed by law, and not by contract. This, broadly stated, is the general rule for determining the line of demarcation in clearly defined cases. There are, however, numerous instances where both the elements of tort and contract are involved. In Burdick on the Law of Torts (page 18) it is said:

"Between the classes, of which the two preceding cases are representatives, is a numerous and extensive class, where the plaintiff is entitled to sue either in contract or in tort, because the defendant's act is an unlawful interference with the right of plaintiff which is created by agreement between them, and also with a right which is created by law."

And to the same effect Cooley on Torts (3d Ed.), vol. 1, p. 156. See, also, *Church* v. *Anti-Kalsomine Co.*, 118 Mich. 219 (76 N. W. 383), and the general discussion of this question found in the dissenting opinion by Justice STONE in *Baker* v. *Railroad Co.*, 169 Mich. 626 (135 N. W. 937); also, *Andrews* v. *Blakeslee*, 12 Iowa, 577.

It is conceded that the bare omission to observe a contract obligation is not a tort, unless such omission involves the violation of some right created by law; but defendant's counsel urge that nothing more is disclosed in this declaration than a broken promise—the violation of his agreement to permit the bank to collect the balance of the purchase price of the land—and obviously no duty at all would exist from defendant to plaintiff in the absence of the alleged promise.

The wrong charged in this declaration is something more than a broken promise. The declaration states that defendant had put his deed of this property into the hands of the bank with full and exclusive authority to deliver to the grantee and power to collect the unpaid balance; that at his solicitation $750 was advanced to him in reliance upon, and in effect out of, the fund this escrow deed called for, and which he orally assigned to the bank, investing it with the authority, and with written evidence of the right, to collect the same, conferring upon the bank, as between it and himself, absolute control and ownership *pro tanto* to the amount it had advanced. So far as that transaction was concerned, there remained then no further promise to fulfill nor active duty for him to

perform. He had performed. He is not charged with any nonfeasance, but with affirmative malfesance—with surreptitiously, deceitfully, and fraudulently collecting money which did not belong to him, with wrongfully and unlawfully doing an act while well aware of the fact that the right on his part to so act did not exist, conduct characterized in the former decision (180 Mich. 150 [146 N. W. 623]) as "dishonest, disreputable and fraudulent." The tort so alleged is of that class said to be connected with the contract only as the contract enabled the tort-feasor to bring the party wronged into it. To fraudulently obtain and appropriate the money of another is no less tortious conduct when the other's right to that money was derived through a contract with the wrongdoer than as though the right to it had been conferred by a contract with some third party. In either case, such dishonest acquisition is clearly a malfeasance and the violation of a fundamental moral and legal duty enjoined upon every person to so conduct himself in the exercise of his own rights as not to trespass upon those of another and to refrain from invading them by force or fraud.

The gist of the wrong claimed and complained of here is active malfeasance. Of wrongs arising from misfeasance or nonfeasance only, it was early said in Chitty on Pleadings (6 Eng. Ed.), p. 135 (16th American Ed.), p. 152:

"And it seems that, although there be an express contract, still, if a common-law duty result from the facts, the party may be sued in tort for any neglect or misfeasance in the execution of the contract. * * * Where there is an express promise, and a legal obligation results from it, then the plaintiff's cause of action is most accurately described in assumpsit, in which the promise is stated as the gist of the action. But where from a given state of facts the law raises a legal obligation to do a particular act, and there is

186 Mich.—8.

a breach of that obligation, and a consequential damage, there, although assumpsit may be maintainable upon a promise implied by law to do the act, still an action on the case founded in tort is the more proper form of action, in which the plaintiff in his declaration states the facts out of which the legal obligation arises, the obligation itself, the breach of it, and damage resulting from that breach."

Of the general definition of a tort as "a wrong independent of a contract," it is well said in *Rich* v. *Railroad Co.*, 87 N. Y. 382:

"And yet it is conceded that a tort may grow out of, or make part of, or be coincident with, a contract (2 Bouvier, *supra*), and that precisely the same state of facts, between the same parties, may admit of an action either *ex contractu* or *ex delicto*. (Cooley on Torts, 90.) In such cases the tort is dependent upon, while at the same time independent of, the contract; for, if the latter imposes a legal duty upon a person, the neglect of that duty may constitute a tort founded upon a contract. (1 Addison on Torts, 13.)"

The sole question to be determined under this demurrer is whether there is a misjoinder.

For the reasons given, we conclude that the three counts in plaintiff's declaration state tortious acts resulting in damage and injury to plaintiff and the violation of a legal duty, thus sounding in tort.

The order overruling defendant's demurrer is sustained.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.