BAILEY v SCHAAF (ON REMAND)

Docket No. 295801. Submitted August 28, 2013, at Lansing. Decided
February 20, 2014, at 9:00 a.m. Leave to appeal sought.

Devon S. Bailey brought an action in the Genesee Circuit Court
against Steven G. Schaaf; T.J. Realty, Inc., doing business as
Hi-Tech Protection; an apartment complex, Evergreen Regency
Townhomes, Ltd.; Radney Management & Investments; and oth-
ers for injuries he suffered on August 4, 2006, while he was at the
Evergreen complex. The complex was owned and operated by
Radney. In 2003, Radney entered into a contract with Hi-Tech to
provide Evergreen with security personnel to patrol the premises.
Radney and Hi-Tech negotiated a new contract in the summer of
2006, with an effective date of August 28, 2006. Hi-Tech security
guards William Baker and Chris Campbell were on duty and
patrolling the complex on the night plaintiff was injured. A
resident had informed Baker and Campbell that Schaaf was
threatening people with a gun at an outdoor gathering. Plaintiff
alleged that Baker and Campbell ignored the warning. Sometime
later the guards heard two gun shots; Schaaf had shot plaintiff
twice in the back, rendering plaintiff a paraplegic. Plaintiff alleged
that Baker and Campbell were agents of Hi-Tech and that Hi-Tech
was an agent of Radney and Evergreen. Plaintiff asserted multiple
claims against all defendants under theories of premises liability,
negligent hiring and supervising, ordinary negligence, vicarious
liability, and breach of contract. The court, Joseph J. Farah, J.,
granted partial summary disposition in favor of all defendants but
Schaaf, and plaintiff appealed. The Court of Appeals, BECKERING,
P.J., and WHITBECK and M. J. KELLY, JJ., affirmed in part and
reversed in part the circuit court's order. 293 Mich App 611 (2011).
The Court of Appeals concluded in part that Evergreen and
Radney owed plaintiff a duty to call the police in response to an
ongoing emergency on the premises, extending the Supreme
Court's decision in *MacDonald v PKT, Inc*, 464 Mich 322 (2001), to
the landlord-tenant context. The Court of Appeals, however,
rejected plaintiff's argument that he was a third-party beneficiary
of the provision-of-security contract between Hi-Tech and Ever-
green, and concluded that Hi-Tech did not owe plaintiff a duty that
was separate and distinct from Hi-Tech's duties under the original

2003 contract between Hi-Tech and Evergreen that was in effect at the time of plaintiff's injuries. The Supreme Court granted an application for leave to appeal brought by all defendants except Schaaf. In the grant order, the Supreme Court asked the parties to address whether the Court of Appeals had erred when it extended the *MacDonald* holding to the landlord-tenant context. 491 Mich 924 (2012). Following oral argument, the Supreme Court affirmed in part the decision of the Court of Appeals, agreeing that landlords have a duty to reasonably expedite police involvement when put on notice of criminal acts occurring in common areas that pose a risk of imminent and foreseeable harm to an identifiable tenant or invitee. The Supreme Court vacated that portion of the Court of Appeals judgment that upheld the trial court's dismissal of plaintiff's negligence claims against Hi-Tech, and remanded the case for further consideration of that issue and for consideration of Evergreen and Radney's argument that the dismissal of the claims against the security guards relieved them of vicarious liability. 494 Mich 595 (2013).

On remand, the Court of Appeals *held*:

1. In order to recover against Hi-Tech, plaintiff had to establish that Hi-Tech owed him a duty of care. A duty to act for another person's benefit may arise by contractual agreement, by statute, or under the common law. But not every person benefited by a contractual agreement may sue to enforce the duties arising under it. Rather, only the parties to the agreement and those third parties that the contracting parties intended to benefit by the agreement may sue to enforce it. Persons acting pursuant to a contract may, however, be liable to third parties for negligently performing their contractual duties. For the plaintiff to recover, the claim must be premised on a duty that is separate and distinct from the underlying contractual obligation. In this case, although Hi-Tech had a contractual obligation to provide security guards who would presumably protect Evergreen's property, tenants, and guests, Hi-Tech had no legal duty to provide that protection because, under Michigan's common law, a person generally does not have a duty to protect or intervene to help others who might be in danger, and there was no special relationship between Hi-Tech and plaintiff that obligated Hi-Tech to act to protect plaintiff. Nor did plaintiff allege that Hi-Tech's employees breached their common-law duty to act with ordinary care by creating a new hazard or increasing the danger posed by an existing hazard. Because plaintiff failed to allege that Hi-Tech breached a duty that was separate and distinct from its obligations under its agreement

with Evergreen, the trial court did not err when it dismissed plaintiff's claims against Hi-Tech.

2. In civil cases, generally a litigant must preserve an issue for appellate review by raising it in the trial court. However, Michigan's appellate courts may, in exceptional circumstances, consider claims that were not properly preserved. In this case, the issue whether the dismissal of the claims against the security guards relieved Evergreen and Radney of vicarious liability under the decision in *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280 (2007), was not preserved. But under the circumstances of the case, it was appropriate for the Court of Appeals to consider the issue for the first time on appeal.

3. Vicarious liability is indirect responsibility imposed by operation of law. A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort. If the agent has not breached a duty owed to the third party, the principal cannot be held vicariously liable for the agent's acts or omissions. Similarly, a principal cannot be held vicariously liable for his or her agent's alleged tort if the trial court dismisses the claim against the agent and that dismissal constitutes an adjudication on the merits. However, in either case, the principal remains directly liable for the principal's own tortious conduct, including negligently hiring, training, or supervising an employee. In this case, in addition to alleging claims of vicarious liability against Evergreen and Radney, plaintiff also alleged traditional claims of direct liability against Evergreen and Radney, including negligence in hiring, supervising, and retaining Hi-Tech. Further, Evergreen and Radney, as landlords or premises possessors, had a duty to adequately respond to an ongoing emergency, and plaintiff's allegations were sufficient to state a claim that Evergreen and Radney breached that duty. Because plaintiff's remaining claims against Evergreen and Radney involved direct liability, the trial court's decision to dismiss the claims against security guards Baker and Campbell did not implicate *Al-Shimmari*'s holding that the principal cannot be held vicariously liable when a court dismisses on the merits the negligence claims against the agent.

Affirmed in part, reversed in part, and remanded for further proceedings.

MASTER AND SERVANT — VICARIOUS LIABILITY — DIRECT LIABILITY.

A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort; if the agent has

not breached a duty owed to the third party, the principal cannot be held vicariously liable for the agent's acts or omissions; nor can the principal be held vicariously liable for his or her agent's alleged tort if the trial court dismisses the claim against the agent and that dismissal constitutes an adjudication on the merits; the principal, however, remains directly liable for the principal's own tortious conduct.

*Donald M. Fulkerson* and *David A. Robinson* for Devon Scott Bailey.

*Gary P. Supanich PLLC* (by *Gary P. Supanich*) for T.J. Realty, Inc., d/b/a Hi-Tech Protection, Evergreen Regency Townhomes, Ltd., and Radney Management & Investments.

ON REMAND

Before: BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ.

PER CURIAM. This case returns to us on remand from our Supreme Court to reconsider whether the trial court properly dismissed plaintiff Devon Scott Bailey's claims against defendants T.J. Realty, Inc., which did business under the name Hi-Tech Protection, Inc. (Hi-Tech), Evergreen Regency Townhomes, Ltd. (Evergreen), and Radney Management & Investments (Radney). *Bailey v Schaaf*, 494 Mich 595, 618-619; 835 NW2d 413 (2013). For the reasons more fully explained in this opinion, we again conclude that the trial court erred when it dismissed Bailey's claim against Evergreen and Radney for breach of their duty to involve the police after learning of an ongoing criminal emergency, but did not err when it dismissed Bailey's remaining claims. Accordingly, we again affirm in part, reverse in part, and remand for further proceedings.

I. BASIC FACTS

In November 2007, Bailey sued various parties to recover damages for injuries he sustained after defendant Steven Gerome Schaaf shot him at an outdoor gathering on the grounds of an apartment complex. See *Bailey v Schaaf*, 293 Mich App 611, 616-617; 810 NW2d 641 (2011). In addition to his claim against Schaaf, Bailey eventually alleged claims against Evergreen, which owned the apartment complex; the complex's manager, Radney; the business that provided security for the complex, Hi-Tech; Hi-Tech's owner, Timothy Johnson; and the security guards that Hi-Tech assigned to the complex on the day of the shooting, William Baker and Christopher Campbell. *Id.* at 617. The trial court dismissed the claims against the individual defendants—Baker, Campbell and Johnson—after Bailey's lawyer declined to argue a basis for holding them individually liable. *Id.* at 618. The trial court later dismissed the claims against Evergreen, Radney, and Hi-Tech, but entered a default judgment against Schaaf. Bailey then appealed the trial court's decision to dismiss his claims against Evergreen, Radney, and Hi-Tech to this Court. *Id.* at 619-620.

In that first appeal, we addressed three issues: whether the trial court abused its discretion when it allowed Evergreen and Radney to amend their responses to Bailey's request for admissions, whether the trial court erred when it determined that Bailey was not a third-party beneficiary of the contract for security services between Evergreen and Hi-Tech, and whether the trial court erred when it dismissed Bailey's claims against Evergreen, Radney, and Hi-Tech under MCR 2.116(C)(8) after it determined that Bailey failed to identify a duty that any of these defendants owed to him. See *Bailey*, 293 Mich App at 614-615, 627. We

concluded that the trial court did not abuse its discretion when it permitted Evergreen and Radney to amend their responses to Bailey's request to admit and did not err when it determined that Bailey was not a third-party beneficiary under the contract between Evergreen and Hi-Tech. *Id.* at 620-626.

Turning to the duties that Evergreen and Radney may have owed to Bailey, this Court surveyed the authorities addressing a premises possessor's duty to his or her invitees and recognized that the common law does not normally impose a duty to protect invitees from criminal acts by third parties. *Id.* at 629-642. This Court, however, acknowledged that our Supreme Court had determined that merchants have a limited duty to respond to criminal acts: the merchant must expedite the involvement of the police "when a situation presently occurring on the premises poses a risk of imminent and foreseeable harm to identifiable invitees." *Id.* at 636, citing *MacDonald v PKT, Inc*, 464 Mich 322, 326, 335, 338; 628 NW2d 33 (2001). We then reasoned that the limited duty to involve the police applied equally to landlords. *Bailey*, 293 Mich App at 640-642. Because Bailey's complaint adequately alleged a claim against Evergreen and Radney premised on this limited duty, we determined that the trial court erred when it dismissed Bailey's claims against Evergreen and Radney under MCR 2.116(C)(8). *Id.* at 642.

Finally, we determined that Hi-Tech had no common-law duty to protect Evergreen and Radney's invitees from criminal acts by third parties; we explained that any duty that Hi-Tech may have had arose from its contract to provide security services, which Bailey could not use as a basis for his claim because he was not a third-party beneficiary under the contract. *Id.* at 642-643, citing *Fultz v Union-Commerce Assoc*, 470 Mich

460, 461-462; 683 NW2d 587 (2004). For that reason, we concluded that the trial court did not err when it dismissed Bailey's claim against Hi-Tech. *Id.* at 643.

On further appeal, our Supreme Court affirmed this Court's extension of the duty stated in *MacDonald* to the landlord-tenant relationship. *Bailey*, 494 Mich at 618-619. It did not, however, affirm this Court's judgment in its entirety; it vacated a portion of the opinion and remanded the case for consideration of two issues. *Id.* at 619.

First, it asked this Court to consider Evergreen and Radney's argument that the dismissal of the claims against the security guards relieved them of vicarious liability under the decision in *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280; 731 NW2d 29 (2007). See *Bailey*, 494 Mich at 619. The Supreme Court indicated that this Court should additionally consider whether Evergreen and Radney properly preserved that issue for appeal. *Id.*

Second, the Supreme Court asked this Court to reconsider our decision concerning Hi-Tech's duty to Bailey—if any—in light of the decisions in *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157; 809 NW2d 553 (2011), and *Hill v Sears, Roebuck & Co*, 492 Mich 651; 822 NW2d 190 (2012), which clarified and applied the holding in *Fultz*. See *Bailey*, 494 Mich at 619.

## II. HI-TECH'S DUTY

### A. STANDARD OF REVIEW

We first reconsider whether the trial court properly dismissed Bailey's claim against Hi-Tech on the grounds that he failed to show that Hi-Tech owed him a duty that was distinct from those provided under Hi-

Tech's agreement with Evergreen and Radney. This Court reviews de novo whether the trial court properly granted a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly interpreted and applied the common law. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). Likewise, whether Hi-Tech owed a duty to Bailey is a question of law that this Court reviews de novo. See *Fultz*, 470 Mich at 463.

### B. CONTRACTUAL DUTIES AND TORT LIABILITY

In our prior opinion, we determined that Bailey "failed to identify a duty that was separate and distinct from Hi-Tech's duties under its contract with Evergreen." *Bailey*, 293 Mich App at 642. We noted that Hi-Tech had no common-law duty to protect Bailey from Schaaf or even to take some affirmative step to aid him after he was injured. *Id.* Instead, we stated, to the extent that Hi-Tech had any duty to act, its "duties were created by the terms of the contract" that it had with Evergreen. *Id.* Because Bailey had no right to enforce a "duty imposed solely under a contract to which he is not a party or an intended beneficiary," we concluded that Bailey failed to state a claim against Hi-Tech. *Id.* at 643. Although we applied our Supreme Court's decision in *Fultz*, the Supreme Court has now nevertheless asked us to reconsider our decision in light of the clarification of *Fultz* that it provided in *Loweke* and *Hill*. *Bailey*, 494 Mich at 619. Accordingly, we briefly trace the evolution of the test stated in *Fultz* and clarified in *Loweke* and *Hill*.

In order to recover against Hi-Tech, Bailey had to establish as a threshold matter that Hi-Tech owed him

a duty of care. See *Hill*, 492 Mich at 660. Whether one person owes a duty of care to another depends—in significant part—on the relationship between those persons: "At common law, [t]he determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part *to act* for the benefit of the subsequently injured person." *Id.* at 661 (quotation marks and citations omitted) (alteration in original). A duty to act for another person's benefit may arise by contractual agreement, by statute, or under the common law. *Id.* at 660-661.

A party to an agreement has an enforceable contractual duty to perform as agreed in the contract. See *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212-213; 737 NW2d 670 (2007) (characterizing the right to make and enforce contracts as a fundamental right and stating that, "when parties have freely established their mutual rights and obligations through the formation of unambiguous contracts," the courts must enforce the contract's terms). But not every person benefited by the contractual agreement may sue to enforce the duties arising under it. Rather, only the parties to the agreement and those third parties that the contracting parties intended to benefit by the agreement may sue to enforce it. *Brunsell v City of Zeeland*, 467 Mich 293, 295-299; 651 NW2d 388 (2002). See also *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 427-429; 670 NW2d 651 (2003).

Nevertheless, even though a party to a contract does not have a duty to perform for the benefit of third parties, Michigan courts have long recognized that persons acting pursuant to a contract may be liable to third parties at common law for negligently performing

their contractual duties. *Fultz*, 470 Mich at 464-465 (recognizing that once a party voluntarily undertakes to perform an act, whether gratuitously or for consideration, despite having no prior obligation to do so, that party may have a duty to perform the act in a nonnegligent manner). See also *Hill*, 492 Mich at 663 ("Having engaged to perform this undertaking, defendant installers had a common-law duty to do so with due care . . . ."). Michigan courts have, however, struggled with distinguishing between harms caused by a contracting party's breach of a contractual duty, for which the third party will have no cause of action, and harms caused by the contracting party's breach of the common-law duty to perform a contract in a nonnegligent manner, for which the third party may recover in an action for negligence. See *Fultz*, 470 Mich at 466, citing *Hart v Ludwig*, 347 Mich 559, 564-565; 79 NW2d 895 (1956).

In *Hart*, our Supreme Court had to determine whether Hazen Hart and Lorene Hart properly stated a claim in tort against Frederick Ludwig. *Id*. at 560. The Harts had hired Ludwig to care for their orchard, but shortly after beginning work for the 1953 season, Ludwig refused to continue working. *Id*. The Harts alleged a tort claim premised on Ludwig's negligent failure to remove shoots, prune, fertilize, and protect the orchard from destructive animal life, which caused them damage. *Id*.

Turning to whether the Harts' claim sounded in tort, our Supreme Court recognized that the "question is not without difficulty." *Id*. The Court explained that there had arisen a distinction between claims arising from misfeasance and nonfeasance. This distinction was between claims arising from the negligent failure to perform or timely perform under the contract (nonfea-

sance), which were actionable only in contract, and claims arising from active negligence causing harm (misfeasance), which were actionable in tort. *Id.* at 561-565. The Court stated that it was often difficult to distinguish between nonfeasance and misfeasance in borderline cases. According to the Court, such cases may involve nonfeasance, as with a surgeon's failure to sterilize his instruments or a builder's failure to fill a ditch, which also constitute misfeasance. *Id.* at 564-565. In examining the facts from those decisions in which the courts had concluded that an action in tort would lie, our Supreme Court surmised that the common thread was whether the claim involved a breach of duty that was distinct from enforcing the contractual promise:

> These are all, it is true, failures to act, each disastrous detail, in itself, a "mere" nonfeasance. But the significant similarity relates not to the slippery distinction between action and nonaction but to the fundamental concept of "duty"; in each a situation of peril has been created, with respect to which a tort action would lie without having recourse to the contract itself. Machinery has been set in motion and life or property is endangered. It avails not that the operator pleads that he simply failed to sound the whistle as he approached the crossing. The hand that would spare cannot be stayed with impunity on the theory that mere nonfeasance is involved. In such cases . . . we have a "breach of duty distinct from contract." Or, as Prosser puts it "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." [*Id.* at 565 (citations omitted).]

Because the "only duty, other than that voluntarily assumed in the contract to which [Ludwig] was subject, was his duty to perform his promise in a careful and skillful manner without risk of harm to others, the violation of which is not alleged," the Court concluded

that the Harts' claim sounded in contract: "This is not a duty imposed by the law upon all, the violation of which gives rise to a tort action, but a duty arising out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs." *Id.* at 565-566.

Our Supreme Court reexamined the distinction between a claim arising from the failure to perform under a contract and the negligent performance of a contractual obligation in *Fultz.* In that case, Sandra Fultz fell and injured her ankle while walking across a parking lot owned by Comm-Co Equities. *Fultz,* 470 Mich at 462. Fultz sued Comm-Co as the premises possessor, but also sued Creative Maintenance Limited, which was the company that Comm-Co had hired to provide snow removal services for its lot. *Id.* Fultz alleged that, once Creative Maintenance undertook to clear Comm-Co's lot, it had a common-law duty to exercise reasonable care in performing its contractual duties. *Id.* at 463-464. A jury eventually found that Creative Maintenance breached its duty to provide reasonable snow removal, and this Court affirmed. *Id.* at 462. Our Supreme Court, however, determined that Fultz's claim against Creative Maintenance did not implicate a duty recognized under the common law.

In analyzing the issue, our Supreme Court first acknowledged that persons who undertake to perform an act for another—as with a typical agent or independent contractor—have a duty to perform the act in a nonnegligent manner. *Id.* at 465. The Court explained that this duty must nevertheless be one that the person specifically owed to the plaintiff or must be one that the person owed to the general public. *Id.,* quoting *Clark v Dalman,* 379 Mich 251, 260-261; 150 NW2d 755 (1967). The Court recognized that Michigan courts had tradi-

tionally examined the "contours of this common-law duty" by drawing a distinction between "misfeasance (action) and nonfeasance (inaction) for tort claims" arising from contractual obligations. *Fultz*, 470 Mich at 465. Thus, "[w]e have held that a tort action will not lie when based solely on the nonperformance of a contractual duty." *Id*. at 466, citing *Hart*, 347 Mich 559, *Chase v Clinton Co*, 241 Mich 478; 217 NW 565 (1928), and *Churchill v Howe*, 186 Mich 107; 152 NW 989 (1915).

But the Court felt that this distinction was largely "semantic" and "somewhat artificial." *Id*. As had been recognized in *Hart*, the Court stated, the real distinction was not one of misfeasance or nonfeasance, but of duty. *Fultz*, 470 Mich at 466, quoting *Hart*, 347 Mich at 564-565. It recognized that it had, since the decision in *Hart*, "defined a tort action stemming from misfeasance of a contractual obligation as the 'violation of a legal duty separate and distinct from the contractual obligation.' " *Fultz*, 470 Mich at 467, quoting *Rinaldo's Constr Corp v Mich Bell Tel Co*, 454 Mich 65, 84; 559 NW2d 647 (1997). It then concluded that the "separate and distinct" definition noted in *Hart* and explained in *Rinaldo's* offered "better guidance in determining whether a negligence action based on contract may lie because it focuses on the threshold question of duty in a negligence claim." *Fultz*, 470 Mich at 467. Accordingly, it stated that Michigan courts should in the future analyze whether the claim was one that arose solely from a contract by examining whether the plaintiff pleaded that the agent or contractor violated a duty that was "separate and distinct from the defendant's contractual obligations." *Id*. "If no independent duty exists, no tort action based on a contract will lie." *Id*.

Turning to the facts of the case, the Court determined that Fultz's claims against Creative Mainte-

nance failed because she did not establish that Creative Maintenance had a common-law duty to remove the snow and ice from Comm-Co's parking lot; instead, she essentially alleged that Creative Maintenance breached its contract with Comm-Co "by failing to perform its contractual duty of plowing or salting the parking lot." *Id.* at 468. Moreover, although the Court agreed that the performance of a contractual obligation may amount to a breach of duty that is separate and distinct when the performing party creates a new hazard, *Fultz* did not allege that Creative Maintenance created a new hazard; she only alleged that it failed to clear the lot. *Id.* at 469. Because *Fultz* could not rely on Creative Maintenance's breach of its contractual duty to Comm-Co to establish a claim against Creative Maintenance, the Supreme Court reversed the jury's verdict against Creative Maintenance. *Id.* at 470.

As can be seen from a careful reading of *Fultz*, the Court did not alter the substantive law applicable to claims arising from the negligent performance of a contractual duty; instead, it adopted the analytical framework stated in *Hart* and *Rinaldo's*. Nevertheless, after the decision in *Fultz*, some courts "misconstrued" the decision in *Fultz* to create a "form of tort immunity" for negligence claims raised by noncontracting third parties. *Loweke*, 489 Mich at 168. Specifically, some courts began to apply *Fultz* not by examining whether the plaintiff alleged a claim premised on a duty that was separate and distinct from the underlying contractual obligation, but by examining whether the defendant's conduct "was separate and distinct from the obligations required by the contract or whether the hazard was a subject of or contemplated by the contract." *Id.* Because of the confusion arising from these decisions, in *Loweke* our Supreme Court again addressed the proper analysis

for determining whether a tort action will lie for the negligent performance of a contract.

In *Loweke*, our Supreme Court rejected the notion that *Fultz* established a new test premised on the nature of the obligations under the contract. In *Fultz*, it explained, it had merely "recast the test to focus on whether any legal duty independent of the contract existed." *Id*. at 169.

> Determining whether a duty arises separately and distinctly from the contractual agreement, therefore, generally does not necessarily involve reading the contract, noting the obligations required by it, and determining whether the plaintiff's injury was contemplated by the contract. Instead, *Fultz's* directive is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another. As this Court has historically recognized, a separate and distinct duty to support a cause of action in tort can arise by statute, or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties, and the generally recognized common-law duty to use due care in undertakings. [*Id*. at 169-170 (citations omitted).]

Because the trial court and this Court had misapplied the test stated in *Fultz* to the facts in *Loweke*, the Supreme Court reversed the trial court's dismissal and remanded the case for further proceedings. *Id*. at 172-173.

Our Supreme Court applied the clarified *Fultz* decision in *Hill*, 492 Mich 651. In that case, Marcy Hill, Patricia Hill, and Christopher Hill sued Sears, Roebuck and Co. for injuries that they sustained after Marcy Hill inadvertently released gas into her home through an uncapped gas line, which later ignited. *Hill*, 492 Mich at 656-657. The Hills alleged that Sears negligently in-

stalled an electric dryer more than three years earlier and that its negligence proximately caused their injuries. *Id.* at 656-657.

On appeal, the Court determined that Sears had a limited relationship with the Hills that involved meeting its contractual obligation to deliver and install the dryer and to do so with due care. *Id.* at 662-664. The Court rejected the contention that, by agreeing to deliver and install the electric dryer, Sears assumed additional duties not associated with the delivery and installation. *Id.* at 665. Instead, it held that Sears had no duty with respect to the gas line. *Id.* Finally, the Court agreed that Sears could be liable for breaching a duty that was separate and distinct from its contract as stated in *Fultz*, but concluded that the Hills failed to establish that Sears breached such a duty by creating a "new dangerous condition" or making "an existing dangerous condition more hazardous": "The placement of the dryer did not affect the existence or nature of the hazard in any manner because the danger posed by the uncapped gas line was *exactly the same* before and after the electric dryer was installed." *Id.* at 671.

Turning to this case, under *Fultz*, as clarified in *Loweke* and applied in *Hill*, Bailey could not rely solely on Hi-Tech's promise to provide security services to Evergreen to establish a claim against Hi-Tech. Because Bailey was not a party to Hi-Tech's agreement with Evergreen and was not a third-party beneficiary under that agreement, Bailey had to plead and be able to prove that Hi-Tech breached a duty to him that was separate and distinct from Hi-Tech's promises to Evergreen.[1]

---

[1] In our prior opinion, we rejected Bailey's argument that the trial court erred when it dismissed his third-party beneficiary claim. See *Bailey*, 293 Mich App at 623-626. And that decision is not at issue in this appeal.

And, under *Hill*, Bailey cannot establish the breach of its common-law duty of ordinary care if Hi-Tech's actions did not create a new hazard or make an existing hazard more dangerous.

C. ANALYSIS

Here, Evergreen negotiated and entered into an agreement with Hi-Tech that obligated Hi-Tech to provide certain security services for Evergreen's property. In accordance with the terms of its agreement with Evergreen, Hi-Tech assigned its security guards to the apartment complex where Schaaf shot Bailey. Although Hi-Tech had a contractual obligation to provide security guards who would presumably protect Evergreen's property, tenants, and guests, Hi-Tech had no legal duty to provide such protection because, under Michigan's common law, a person generally does not have a duty to protect or intervene to help others who might be in danger. See *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 498-499; 418 NW2d 381 (1988) (noting that courts are reluctant to establish duties that "force persons to help one another" and recognizing the general rule is "there is no duty that obligates one person to aid or protect another").

And, although a person may become obligated to act to protect another on the basis of certain special relationships, it is clear that none of those special relationships apply to the relationship between Hi-Tech and Bailey. See *Bailey*, 494 Mich at 604 (recognizing that the common law imposes a duty of care when a special relationship exists as when one person entrusts himself to the control and protection of another); *Williams*, 429 Mich at 499 (stating that there are "special relationships"—such as those between a common carrier and its passengers, between an innkeeper and his

or her guests, between an employer and its employees—that may give rise to a duty to provide a place of safety); *Dawe v Bar-Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 390; 808 NW2d 240 (2010) (holding that the psychiatrist-patient relationship is a special relationship that may give rise to a duty to protect another from harm by a third party).

Bailey did not allege that Hi-Tech had possession and control over the premises at issue; accordingly, Hi-Tech had no duty to keep the common areas safe. See *Duffy v Irons Area Tourist Ass'n*, 300 Mich App 542, 547; 834 NW2d 508 (2013) (explaining that premises liability usually applies to land owners, tenants, and lessees because those persons or entities are in possession and control of the land). For the same reason, Hi-Tech had no duty as a landlord or merchant to expedite the involvement of police officers once it became aware—through its employees—that Bailey and the other guests at the gathering were in imminent danger. See *Bailey*, 494 Mich at 614-617.

Finally, Bailey did not allege that Hi-Tech's employees breached their common-law duty to act with ordinary care by creating a new hazard or increasing the danger posed by an existing hazard; given the allegations, the danger posed by Schaaf was the same without regard to Baker and Campbell's presence at the apartment complex. See *Hill*, 492 Mich at 671-672 (stating that the installers did not create a new hazard or increase the danger posed by an existing hazard when they installed the dryer; therefore, there was no breach of the common-law duty of ordinary care); *Hart*, 347 Mich at 565 (stating that the case at issue did not involve allegations that the defendant breached his duty to perform his promise "in a careful and skillful manner without risk of harm to others"); compare *Ross*

*v Glaser*, 220 Mich App 183, 186-187; 559 NW2d 331
(1996) (holding that the provision of a firearm to a
person with known mental instability was actionable
misfeasance as opposed to mere nonfeasance).

If Hi-Tech and its employees had any duty to protect
Bailey or otherwise intervene on his behalf, that duty
was solely a matter of the contractual agreements
between Hi-Tech, its employees, and Evergreen. While
Evergreen might be able to recover for a beach of the
agreement to provide security services should it ulti-
mately be held liable for the Hi-Tech employees' failure
to properly respond to the events, Bailey cannot rely on
Hi-Tech's purported breach of the agreement with
Evergreen to establish his tort claim. See *Hart*, 347
Mich at 565-566 ("This is not a duty imposed by the law
upon all, . . . but a duty arising out of the intentions of
the parties themselves and owed only to those specific
individuals to whom the promise runs."). Because
Bailey failed to allege that Hi-Tech breached a duty that
was separate and distinct from its obligations under its
agreement with Evergreen, the trial court did not err
when it dismissed Bailey's claim against Hi-Tech. See
*Fultz*, 470 Mich at 469.

### III. VICARIOUS LIABILITY AND AGENCY

#### A. STANDARDS OF REVIEW

We next consider Evergreen and Radney's argument
that this Court should affirm the trial court's decision
to dismiss Bailey's claims under the rule stated in
*Al-Shimmari*, 477 Mich 280. On appeal, Evergreen and
Radney contend that Bailey's claims against them are
premised on the failure of their purported agents,
Baker and Campbell, to involve police officers and,
under our Supreme Court's decision in *Al-Shimmari*,

the claims against them as principals must be dismissed because the claims against their agents were dismissed. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369. This Court also reviews de novo the proper scope and application of the common law, such as the common law of agency. *Brecht*, 297 Mich App at 736.

### B. PRESERVATION

As a preliminary matter, we must address whether Evergreen and Radney properly preserved this issue for appeal.

In February 2009, Evergreen, Radney, Hi-Tech, Campbell, Baker, and Johnson moved for summary disposition under MCR 2.116(C)(8). In their motion and brief, they argued that the claims against them must be dismissed because Bailey failed to properly plead that any one of them breached a duty owed to Bailey. Specifically, they maintained that Michigan law does not impose a duty on premises possessors, such as Evergreen or Radney, to provide security or make their premises safe from criminal activity, and does not impose a duty to protect or aid others. They did not address Evergreen or Radney's vicarious liability for any tort committed by Baker or Campbell and did not raise or discuss our Supreme Court's decision in *Al-Shimmari*.

The trial court held a hearing on the motion in March 2009. At the hearing, defendants' lawyer began by arguing that the individual defendants—Johnson, Baker, and Campbell—plainly had no duty to protect or aid Bailey. After defendants' lawyer summarized his position as to the duty owed by the individual defendants, the trial court interrupted:

Well, let's stop there for just a second. Mr. Robinson [addressing Bailey's lawyer], that's probably the part that I have the most difficulty with from your position. How [are] Tim Johnson and these individuals personally liable? This is a corporation. How are they personally liable? I don't even believe there's been an allegation that would suggest the piercing of the corporate veil or any ultra [sic] ego theory. How are they personally liable?

In response, Bailey's lawyer stated that he was "really not contending that" and noted that he had not "address[ed] that in our response." After this brief colloquy, the trial court granted the request for dismissal as to the claims against the individual defendants. The trial court went on to rule that Evergreen, Radney, and Hi-Tech also had no duty to provide security or to otherwise protect or aid Bailey. In May 2009, the trial court entered an order dismissing the claims against each defendant other than Schaaf that was consistent with that determination.

As can be seen, Evergreen and Radney did not argue before the trial court that Bailey's claims against them had to be dismissed once the trial court determined that Baker and Campbell could not be held individually liable. Because the parties did not raise this issue before the trial court and the trial court did not address it, this issue was not preserved for appellate review. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

In civil cases, Michigan courts generally follow the rule that a "a litigant must preserve an issue for appellate review by raising it in the trial court." *Id*. This "raise or waive"[2] rule of appellate review has its origins in judicial efficiency and fundamental fairness:

---

[2] We recognize that there is a distinction between the terms "waiver" and "forfeiture" in Michigan law. See *Walters*, 481 Mich at 384 n 14. However, for purposes of determining whether this Court should exercise its discretion to consider an issue that was not raised and addressed by

By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually. This practice also avoids the untenable result of permitting an unsuccessful litigant to prevail by avoiding its tactical decisions that proved unsuccessful. Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute. [*Id.* at 388 (citations omitted).]

When a litigant waives appellate review by failing to properly preserve a claim of error, although under no obligation to do so, this Court may exercise its discretion to consider the claim.[3] *Id.* at 387. See also *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) ("[T]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is

the trial court, we elect to use the term "waiver" in its broader sense, as our Supreme Court elected to do when discussing the issue in *Walters. Id.* at 384 n 14, 387-390.

[3] In contrast to civil cases, Michigan courts will review even unpreserved errors from criminal trials; we will do this to ensure the defendant's constitutional right to a fair trial. See *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987). Nevertheless, even then, this Court's review is limited to plain errors affecting the defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Similarly, because a parent's right to custody of his or her child is an important liberty interest protected by the United States Constitution, this Court will also review unpreserved errors in termination proceedings for plain error. See *In re Rose*, 174 Mich App 85, 88; 435 NW2d 461 (1989), rev'd on other grounds 432 Mich 934; *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). The same concerns, however, do not arise with civil cases. See *Napier*, 429 Mich at 233-234 (refusing to characterize an erroneously entered civil judgment as a miscarriage of justice and noting that a criminal defendant cannot obtain adequate relief for a wrongful conviction by suing his or her lawyer for malpractice).

necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented[.]"). But this Court will exercise its discretion to review such claims sparingly and only when exceptional circumstances warrant review. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993); *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987) (advising that this power should be "exercised quite sparingly").

Whether *Al-Shimmari* applies to this case is solely a question of law that requires no further factual development and plainly implicates the proper determination of the case. See *Smith*, 269 Mich App at 427. Moreover, given the peculiar procedural history of this case, it is not clear that Evergreen or Radney's lawyer had a reasonable opportunity to raise this alternate basis for relief before the trial court; by declining to argue a basis for imposing liability, Bailey's lawyer essentially conceded that whether the individual defendants could be personally liable was not at issue, and the trial court soon after determined that it would be appropriate to dismiss the claims against Evergreen and Radney on the grounds that Bailey also failed to state a claim against them. Thus, it is not surprising that Evergreen and Radney did not offer an alternate basis for dismissal at the hearing. Finally, even if we declined to review this issue, we can see no reason that would preclude Evergreen and Radney from raising this ground for dismissal in a new motion on remand, which in turn could result in yet further appeals. Therefore, in the interests of justice and efficiency, we elect to exercise our discretion and consider this issue for the first time on appeal. See *Walters*, 481 Mich at 387-388.

## C. AGENCY AND TORT LIABILITY

In order to properly understand the decision in *Al-Shimmari* and how it might apply to the facts of this case, it is useful to briefly summarize the law of agency as it applies to a principal's vicarious liability for the torts of the principal's agent, an agent's liability to third parties for the agent's own torts, and a principal's direct liability for the principal's own torts.

A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort. See *Al-Shimmari*, 477 Mich at 294. "Vicarious liability is indirect responsibility imposed by operation of law." *Theophelis v Lansing Gen Hosp*, 430 Mich 473, 483; 424 NW2d 478 (1988). Courts impose indirect responsibility on the principal for his or her agent's torts as a matter of public policy, but the "principal, having committed no tortious act, is not a 'tortfeasor' as that term is commonly defined." *Id*. Because liability is imputed by law, a plaintiff does not have to prove that the principal acted negligently. "Rather, to succeed on a vicarious liability claim, a plaintiff need only prove that an agent has acted negligently." *Al-Shimmari*, 477 Mich at 294-295. Concomitantly, if the agent has not breached a duty owed to the third party, the principal cannot be held vicariously liable for the agent's actions or omissions. *Lincoln v Gupta*, 142 Mich App 615, 622; 370 NW2d 312 (1985).

A principal, however, remains directly liable for his or her own tortious conduct. See *Cox v Flint Bd of Hosp Mgrs*, 467 Mich 1, 11; 651 NW2d 356 (2002) (recognizing that a principal may be directly liable for the principal's own torts or vicariously liable for torts committed by its agents); *Malcolm v City of East Detroit*, 437 Mich 132, 145-146; 468 NW2d 479 (1991)

(explaining that "[w]hether liability is vicarious or direct depends upon whether the focus is upon the entity or the individual employee committing the tort"); *Cascarella v Nat'l Grocer Co*, 151 Mich 15, 18; 114 NW 857 (1908). Thus, a principal may be directly liable—as opposed to vicariously liable—for negligently hiring, training, or supervising an employee, if the employee's actions harm a third party. See *Zsigo v Hurley Med Ctr*, 475 Mich 215, 227; 716 NW2d 220 (2006); *Hersh v Kentfeld Builders, Inc*, 385 Mich 410, 412-413; 189 NW2d 286 (1971); but see *DeShambo v Anderson*, 471 Mich 27, 31; 684 NW2d 332 (2004) (stating that it "has been long established in Michigan that a person who hires an independent contract is not liable for injuries that the contractor negligently causes"); *Campbell v Kovich*, 273 Mich App 227, 235; 731 NW2d 112 (2006) (stating that Michigan law does not recognize a cause of action for negligently hiring an independent contractor). And, in those types of cases, the plaintiff's ability to establish his or her claims against the principal does not depend on the plaintiff's ability to prove that the agent breached a duty that the agent owed to another.

As for an agent, he or she is personally liable for his or her own tortious conduct, even when acting on behalf of his or her principal. *Dep't of Agriculture v Appletree Marketing, LLC*, 485 Mich 1, 17 n 39; 779 NW2d 237 (2010). The agent remains liable even though his or her principal may also be vicariously liable. *Wines v Crosby & Co*, 169 Mich 210, 215; 135 NW 96 (1912). An agent is not, however, liable to a third party merely because he or she neglects to perform a duty that his or her principal owes to a third party. In such a case, the third party's remedy is against the principal alone. See *Ellis v McNaughton*, 76 Mich 237, 240-242; 42 NW 1113 (1889) (acknowledging that an agent is not normally liable for his or

her nonfeasance, but distinguishing the facts therein, and concluding that the agent's duty was "imposed upon him by law as a responsible individual in common with all other members of society"); 2 Restatement Agency, 3d, § 7.02 ("An agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party.") (emphasis omitted); 2 Restatement Agency, 2d, § 352, p 122; 2A CJS, Agency, § 399, p 695; but see 2 Restatement Agency, 2d, § 354, p 125 (noting that an agent who specifically undertakes to protect another for his principal may be liable for failing to protect the third party under certain circumstances).

As our Supreme Court recognized more than 100 years ago, when an agent breaches a duty owed solely to his or her principal, a third party may not rely on that breach to establish a tort claim; but when the agent breaches a separate duty owed to the third party, the third party may hold the agent liable:

> "It is often said in the books that an agent is responsible to third persons for misfeasance only, and not for nonfeasance. * * * But, if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot by abandoning its execution midway, and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not non-feasance, or doing nothing, but it is misfeasance,—doing improperly." [*Ellis*, 76 Mich at 241, quoting *Osborne v Morgan*, 130 Mass 102, 103 (1881).]

Although no longer framed as a matter of misfeasance versus nonfeasance, this rule is consistent with modern application of the rule:

> [C]onduct that breaches an agent's duties to the principal does not always, additionally, subject the agent to liability to a third party although the agent's conduct also harms the third party. An agent is subject to liability to a third party only when the agent's conduct breaches a duty that the agent owes the third party. The duty may be derived from tort law, from a contract between the third party and the principal when the agent is a party to the contract, from a promise made by the agent to the principal for which the third party is an intended third-party beneficiary, or from the agent's assumption of duties toward the third person that are independent of the duties the agent owes the principal. [2 Restatement Agency, 3d, § 7.02, comment *b*.]

Because the distinction between misfeasance and nonfeasance is analogous to that addressed by the *Fultz* line of cases discussed earlier in this opinion, the analytic framework applied in *Fultz* applies equally to determining whether an agent can be liable in tort to a third party. Accordingly, a plaintiff cannot sue an agent to recover for harm caused by the agent's breach of a duty owed *solely* to his or her principal. Rather, the plaintiff must allege and be able to prove that the agent breached a duty that was separate and distinct from his or her agency agreement with the principal. See *Fultz*, 470 Mich 467; *Ellis*, 76 Mich at 240-242.

### D. AL-SHIMMARI

With these basic principles of agency law in mind, we now examine our Supreme Court's decision in *Al-Shimmari*. In that case, Abdul Al-Shimmari sued his surgeon, Dr. Setti Rengachary, and several institutional defendants after he discovered that he had suffered a

nerve injury during a surgery that Rengachary performed. *Al-Shimmari*, 477 Mich at 284. Our Supreme Court determined that the trial court did not err when it dismissed the claim against Rengachary because Al-Shimmari failed to serve process on Rengachary within the period of limitations. *Id.* at 287-293. After concluding that the trial court did not err when it dismissed the claim against Rengachary, the Court analyzed whether the claims against the institutional defendants could nevertheless proceed. *Id.* at 294.

The Court first noted that Al-Shimmari's claims against the institutional defendants were premised solely on their vicarious liability for Rengachary's alleged negligence (there were no claims against the institutional defendants involving direct liability). *Id.* at 285, 294-295. The Court then examined MCR 2.504(B)(3) and determined that the dismissal of the claim against Rengachary constituted an adjudication on the merits under that rule. *Id.* at 295. Because the dismissal of the claim against Rengachary amounted to a dismissal on the merits, Al-Shimmari could no longer argue the merits of the claim against Rengachary and, therefore, could not impute Rengachary's negligence to the institutional defendants. *Id.* at 295-296. For that reason, the Supreme Court determined that Al-Shimmari's vicarious-liability claims against the institutional defendants had to be dismissed. *Id.* at 297.

As explained by our Supreme Court in *Al-Shimmari*, a principal cannot be held vicariously liable for his or her agent's alleged tort if the trial court dismisses the claim against the agent and that dismissal constitutes an adjudication on the merits. This is so because the plaintiff can no longer argue the merits of the underlying tort claim. *Al-Shimmari*,

477 Mich at 295-296. The decision in *Al-Shimmari* did not, however, involve—and therefore did not address—whether the dismissal of claims against an agent constitutes an adjudication on the merits concerning any acts or omissions that the agent took on the principal's behalf, which did not themselves amount to a breach of a duty owed by the agent to the third party, but nevertheless constituted a breach of a duty owed by the principal to that third party. Because the Court in *Al-Shimmari* only addressed those situations in which the principal's liability arose solely from its agent's breach of a duty to the injured party, we conclude that it applies only to claims premised solely on true vicarious liability.

If a plaintiff's claim against the principal does not involve an agent's breach of a duty that the agent separately owed to the third party, that claim does not involve true vicarious liability and the dismissal of the plaintiff's claims against the agent will not constitute an adjudication on the merits as to whether the agent's acts or omissions constitute the breach of duty independently owed by the principal. Similarly, in those situations in which a plaintiff has alleged separate claims of vicarious and direct liability against the principal on the basis of an agent's conduct, the dismissal of the claims—if any—against the agent will only constitute an adjudication on the merits as to those claims against the principal involving true vicarious liability. Accordingly, if Bailey's remaining claims against Evergreen and Radney are not solely based on vicarious liability— that is, do not solely depend on holding Evergreen and Radney liable for a tort committed by Baker and Campbell—the dismissal of the claims against Baker and Campbell will not constitute an adjudication on the merits under *Al-Shimmari*.

E. APPLYING THE LAW

In his second amended complaint, Bailey did allege that Evergreen and Radney were vicariously liable for any torts committed by Hi-Tech, Baker, or Campbell. But he also alleged that his injuries were caused by Evergreen's failure to keep its premises safe and by both Evergreen and Radney's negligence in hiring, supervising, and retaining Hi-Tech. That is, he plainly alleged traditional claims of direct liability against both Evergreen and Radney. Although this Court eventually determined that Bailey failed to state claims against Evergreen and Radney to the extent that his complaint alleged that Evergreen and Radney had a duty to provide security or make its premises safe from criminal activity, this Court nevertheless determined that Bailey's allegations were sufficient to state a claim that Evergreen and Radney—as landlords or premises possessors—breached their duty to adequately respond to an ongoing criminal emergency. *Bailey*, 293 Mich App at 641-642. Accordingly, the claims at issue on appeal do not solely involve true vicarious liability. This is so because Bailey does not have to prove that Baker and Campbell breached a duty that they owed to him in order to establish that Evergreen and Radney breached their duty to respond to an ongoing criminal emergency.

Evergreen and Radney had a common-law duty to their invitees: they had to expedite the involvement of the police "when a situation presently occurring on the premises pose[d] a risk of imminent and foreseeable harm to identifiable invitees." *Bailey*, 293 Mich App at 636, citing *MacDonald*, 464 Mich at 326, 335, 338. Their contractor, Hi-Tech, and its employees, Baker and Campbell, in contrast, had no common-law duty to either protect Bailey from criminal acts by third parties or to involve the police. *Bailey*, 494 Mich at 604 ("It is a

basic principle of negligence law that, as a general rule, 'there is no duty that obligates one person to aid or protect another.' "), quoting *Williams*, 429 Mich at 498-499. Rather, the limited duty to protect others from criminal acts applied solely to Evergreen and Radney as the premises possessors or landlords. *Bailey*, 494 Mich at 614-617.

Moreover, the fact that Evergreen or Radney contracted with Hi-Tech to meet their duty to involve the police did not relieve them of direct liability should Hi-Tech fail to perform its contractual duty. *Fultz*, 470 Mich at 467 n 2. See also *Samuelson v Cleveland Iron Mining Co*, 49 Mich 164, 172-173; 13 NW 499 (1882) (COOLEY, J.) (explaining that, when the "duty which has been neglected is personal to the master himself," it does not matter that an agent or employee neglected the duty; in such cases the principal remains liable in his or her own right). Because Bailey's remaining claims against Evergreen and Radney involve direct liability rather than true vicarious liability, the trial court's decision to dismiss the claims against Baker and Campbell does not implicate *Al-Shimmari*'s holding that the principal cannot be held vicariously liable when the court dismisses on the merits the negligence claims against the agent.

We acknowledge that it might appear incongruous to hold that a principal can be liable for a breach of duty that was caused by its employee or agent's actions while nevertheless holding that the employee or agent's actions do not amount to a breach of duty by the employee or agent in his or her individual capacity. This is particularly true where, as here, the principal's duty would not have been triggered had its security personnel not been informed of the ongoing emergency.

But the same would be true even if Hi-Tech and its employees had not been in the business of providing security. If Evergreen and Radney had hired Hi-Tech to provide maintenance, and had Baker and Campbell been informed of the ongoing emergency while they were conducting maintenance, the outcome might be the same; Bailey could similarly have alleged that Baker and Campbell were Evergreen and Radney's agents, that Evergreen and Radney had notice of the ongoing emergency through their agents, and that their knowledge triggered a duty to involve the police, which Evergreen and Radney breached by failing to call the police. See *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 134; 762 NW2d 178 (2009) (discussing the doctrine of imputed knowledge). Here, Bailey alleged a direct cause of action against Evergreen and Radney. Should Evergreen or Radney be found liable for their purported agents' failure to properly perform their contract, Evergreen and Radney are not without a remedy: they may seek damages for their agents' breach of the agency agreement or security contract. See *Fultz*, 470 Mich at 467 n 2.

IV. CONCLUSION

The trial court did not err when it determined that Bailey failed to allege that Hi-Tech breached a duty to him that was separate and distinct from its obligations under its agreement with Evergreen to provide security services. For that reason, we again conclude that the trial court properly dismissed Bailey's claim against Hi-Tech. Bailey's remaining claims against Evergreen and Radney were not, however, solely premised on vicarious liability. Rather, Bailey alleged that Evergreen and Radney directly breached their duty to involve the police after learning of an ongoing criminal emergency.

Because Bailey did not have to allege or prove that Baker and Campbell committed a tort in order to hold Evergreen or Radney liable under this theory, the trial court's decision to dismiss Bailey's claims against Baker and Campbell does not implicate *Al-Shimmari*. Consequently, we decline to affirm the trial court's decision to dismiss on this alternative basis.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Bailey may tax his costs. MCR 7.219(A).

BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ., concurred.