*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

QUANTUM CONCRETE, INC.,

      Plaintiff/Counterdefendant-Appellant,

v

PLAZA DE KAZA, LLC, and RONALD A. DYKSTRA, doing business as DYKSTRA HOMES,

      Defendants/Counterplaintiffs-
      Appellees.

UNPUBLISHED
September 14, 2023

No. 361420
Kent Circuit Court
LC No. 19-003189-CB

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

In this dispute over the payment for concrete improvements to a commercial property, plaintiff/counterdefendant, Quantum Concrete, Inc., appeals by right the judgment entered by the trial court after a bench trial. The trial court entered a judgment against defendants/counterplaintiffs, Plaza de Kaza, LLC, and Ronald A. Dykstra, who did business as Dykstra Homes, for $24,179.35 in unpaid construction expenses. On appeal, Quantum argues that the trial court erred when it dismissed Quantum's claim for foreclosure under Michigan's Construction Lien Act (CLA), MCL 570.1101 *et seq.*, and erred when it denied Quantum's motion for attorney fees as a sanction for frivolous litigation. Because we conclude that Quantum has not identified any errors warranting relief, we affirm.

## I. BASIC FACTS

Kassra Darehshori, who was sometimes called "Kaz," purchased a retail building on Division Avenue near 28th Street in Grand Rapids, Michigan. He testified that the building came with 9 acres of land, and he intended to develop a banquet hall in the back of the property. Darehshori created Plaza de Kaza to own that property, and he was its sole member. Testimony and evidence established that Darehshori hired an engineer, Daniel Hula, to design a parking lot for the building. Darehshori also stated that he had a longstanding relationship with Ronald Dykstra, who was a carpenter. He hired Dykstra on an hourly and as-needed basis to perform work and advise him on building projects.

Dykstra testified that he assisted with renovations at the Plaza de Kaza property. He performed demolition, framed new walls, hung a drop ceiling, and helped bring the retail space up to standards. Dykstra also helped Darehshori find subcontractors for the drywall, electrical, and roofing work. He said that he typically solicited three estimates and submitted them to Darehshori, who selected the one that he wanted.

Dykstra had done business with Quantum when he built homes and had a good relationship with Quantum's owner, John Trimberger. The building on Division needed a new concrete floor, and Dykstra called Trimberger and asked if he would submit an estimate. Dykstra said that he told Trimberger that the work was for "Kaz's project" and that he would be working for "Kaz," but Trimberger denied that Dykstra ever said he was representing Plaza de Kaza.

Trimberger testified that Dykstra called him in Spring 2018 and asked him to submit an estimate for a new floor in a restaurant. It was his understanding that Dykstra, as the general contractor for the owner, hired Quantum. Trimberger sent his estimates to Dykstra, and Dykstra approved them and asked him to schedule the work. He also sent his invoices to Dykstra.

Trimberger related that, after Quantum completed the floor work, Quantum submitted its invoice to Dykstra, and it was paid.[1] Dykstra then contacted Quantum about replacing the property's sidewalk. Dykstra accepted the estimate, Quantum completed the work, and Quantum invoiced Dykstra. Quantum received payment a few weeks later.

Trimberger stated that Dykstra then called him to submit an estimate for the curb and gutter work on the parking lot. The parking lot was large and required about 3300 feet of curbing. Trimberger submitted an estimate for $94,759.50 for the curb and gutter work to Dykstra. Dykstra called him and gave him the go-ahead to begin work.

Quantum's foreman, Joseph Brooke, stated that they had problems with the curb and gutter project from the start. He stated that the concrete drainage basins were not properly placed, so the drains did not line up with the curbing. There were also problems with the parking lot's grading. He repeatedly called Dykstra, and the excavator returned to correct some of the problems. Trimberger sent invoices to Dykstra for the parking lot work on October 1, October 15, and October 22. All invoices were paid to date. Brooke testified that the excavation work for the area of the traffic circle was in horrid shape. There was crushed concrete around one basin that was much too high, and both catch basins on the traffic circle were spun almost 90 degrees from where they were supposed to be set. Brooke would not touch it until the excavator spun the drains. The excavator eventually came out and adjusted the drains, but they were still too close to the radius point of the traffic circle's center. Brooke ended up pouring the curbing by following the radius and then bringing the curb to the drain. That gave the curbing on that side of the traffic circle a flattened look. Trimberger stated that the last invoice that he sent to Dykstra was for the work performed from October 22, 2018 to November 6, 2018, which included work on the parking lot's traffic circle. Darehshori stated that the traffic circle plainly did not conform to the blueprints—a

---

[1] According to the trial court's January 29, 2021 Opinion and Order Resolving Plaintiff's Motion for Summary Disposition Under MCR 2.116(C)(10), "[a]n entity controlled by Plaza de Kaza's principal paid th[e] amount in full."

"third grader," he opined, "could have seen that it was wrong." He described the traffic circle as having a "taco" shape. The traffic circle was, in his view, the focal point of his whole project; it was the point where customers would drop off their guests, and he wanted it done properly.

Darehshori, Trimberger, Brooke, Hula, and another person met at the site on November 12, 2018, to discuss the traffic circle.

Brooke stated that they discussed options for correcting the traffic circle's appearance. He felt that the matter was merely cosmetic and that landscaping would fix it. Everyone at the meeting appeared to agree to tear out the curbing on one side of the traffic circle and raise its height, and then dovetail it down to the drain. He performed that work eight days later. Brooke said that Darehshori specifically approved the second pour.

Hula said that the traffic circle looked "goofy." He explained that Quantum followed the surveyor's stakes for the traffic circle until it got close to the basin, which was clearly misplaced. Quantum then brought the curb over to the drain without following the stakes. As a result, the traffic circle was not a circle. Quantum should have called the excavator to adjust the basin. If the excavator did not appear, the concrete contractor should have refused to pour. At the meeting on November 12, he said that it was agreed that "they were going to move the catch basin out and then bring the curb around a little more level and then slope down to the catch basin rather than adjust the catch basin."

Trimberger agreed that the traffic circle had a "taco" look from a distance because there were two high ends and two low ends to accommodate the gutters. He stated that the drains were not properly positioned as detailed on the blue prints. In any event, Trimberger felt that it was a nonissue because landscaping would conceal it. He admitted that they agreed to redo the concrete work to raise the height of the curb on the lower side and then dovetail it down to the drain at the meeting held on November 12, 2018. Darehshori called the excavator during the meeting and Darehshori told Trimberger that the excavator would be out the next day, so Trimberger assumed that the excavator would fix the drain position. When no one showed up after a week, Trimberger had his crew remove the concrete and pour new curbs consistent with what had been agreed at the meeting. His crew performed that work on November 20, 2018. In Trimberger's view, the second pour was not a repair of defective work: it was done to placate Darehshori.

After redoing the curbing on the traffic circle on November 20, 2018, Trimberger sought payment of the final invoice from November 6, 2018. There was conflicting testimony about the events, but there was testimony and evidence that Trimberger went to Darehshori's office on November 28, 2018, and upset Darehshori's staff. Darehshori, however, stated that he refused to pay the remaining $24,179.35 balance because Quantum did not correctly pour the traffic circle and not because he was angry with Trimberger.

In April 2019, Quantum sued Plaza de Kaza and Dykstra. It asserted claims of foreclosure on a construction lien, breach of contract, and unjust enrichment. Plaza de Kaza counterclaimed against Quantum for breach of contract and unjust enrichment.

In September 2020, Quantum moved for summary disposition under MCR 2.116(C)(10). Plaza de Kaza responded by moving for summary disposition of Quantum's foreclosure claim

under MCR 2.116(I)(2). The trial court agreed that Quantum failed to establish that it had a valid construction lien and dismissed that claim. As for the remaining claims and counterclaims, the trial court determined that there were questions of fact that had to be resolved at trial.

After a three-day bench trial, the trial court entered its verdict. The court found that Dykstra entered into an agreement with Quantum to perform the improvements to Plaza de Kaza's parking lot. The court further found that Dykstra breached the agreement by failing to secure payment on Quantum's final invoice, and was liable for the amount of the final invoice. The court also found that Plaza de Kaza was liable for the same amount under the theory that Plaza de Kaza was unjustly enriched by the improvement. The trial court rejected Plaza de Kaza's claim that it had a contract with Quantum or that Quantum was unjustly enriched by Plaza de Kaza. The court related that the evidence showed that Plaza de Kaza never entered into a contract with Quantum and never conferred any benefit on Quantum.

The trial court found that the appropriate damages against Dykstra was the amount of the last invoice, $24,179.35, with no setoffs. Additionally, the court acknowledged that the measure of damages for unjust enrichment differed from the damages for a breach of contract, but it concluded that Plaza de Kaza was unjustly enriched by the amount of the last invoice as well. The court explained that the defects remaining after the second pour of the traffic circle were the result of the misplacement of the catch basins and drain tops, which were the responsibility of the excavator, not Quantum. Although Quantum poured the curbs to align with those misplaced drains, the court found that Plaza de Kaza agreed to the plan to rectify the earlier pour and should not be allowed to fault Quantum.

In December 2021, Quantum moved for an award of attorney fees as a sanction for presenting a frivolous defense. The trial court entered its opinion and order denying the motion for sanctions in April 2022. Quantum then appealed by right in this Court.

## II. SUMMARY DISPOSITION

## A. PRESERVATION

On appeal, Quantum argues that the trial court erred in several respects when it granted Plaza de Kaza's motion for summary disposition under MCR 2.116(I)(2). Quantum first argues that the trial court could not consider whether Quantum's lien was untimely under MCL 570.1101(1) because, in its view, Plaza de Kaza waived that defense by failing to assert it consistent with the requirements of MCR 2.111(F).

In civil cases, Michigan follows "the 'raise or waive' rule of appellate review." *Walters v Nadell*, 481 Mich App 377, 387; 751 NW2d 431 (2008). Under that rule, to preserve an issue for appellate review, the party asserting error must demonstrate that the issue was raised in the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020); *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 344; 852 NW2d 180 (2014), vacated not in relevant part 497 Mich 927 (2014). Moreover, the party asserting error must show that the same basis for the error claimed on appeal was brought to the trial court's attention. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 642; 534 NW2d 217 (1995).

Quantum argued in response to Plaza de Kaza's motion for summary disposition of Quantum's lien claim under MCR 2.116(I)(2) that the evidence established the last furnishing of labor or materials for the improvement occurred on November 20, 2018. In the alternative, it argued that there was a question of fact concerning the date of last furnishing labor or materials for the improvement. Quantum failed to argue that the trial court could not consider the motion because Plaza de Kaza waived the defense by failing to properly assert it under the court rules. Quantum asserted waiver in its motion for reconsideration, but a party cannot preserve an issue for appellate review by first raising it in a motion for reconsideration of the trial court's decision. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Because Quantum did not assert this ground for disregarding Plaza de Kaza's motion for summary disposition until its motion for reconsideration, this claim of error is not preserved. See *id*.

In a civil case, a party waives a claim of error that the party did not properly preserve by bringing the issue to the trial court's attention. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3. Although this Court has the discretion to consider issues that were not properly preserved in the trial court, this Court should exercise its discretion only when exceptional circumstances warrant review. *Bailey*, 304 Mich App at 345-346. This case does not involve an exceptional circumstance. See *Napier v Jacobs*, 429 Mich 222, 227-237; 414 NW2d 862 (1987). Therefore, we decline to consider this claim of error. However, we will address Quantum's other claims of error involving the trial court's decision to grant Plaza de Kaza's motion for summary disposition because Quantum adequately raised those issues in the trial court.

## B. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly interpreted and applied the relevant court rules. *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019).

## C. ANALYSIS

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A party is entitled to summary disposition under that rule when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). The party moving for summary disposition bears the initial burden to demonstrate that there is no genuine issue of material fact. *Barnard Mfg*, 285 Mich App at 369. To satisfy that burden, the moving party must identify the issue about which he or she claims there is no genuine issue of material fact and must support his or her claim with affidavits, depositions, admissions, or other documentary evidence that—if left unrebutted—would show that he or she is entitled to judgment as a matter of law. *Id*. at 369-370. If the moving party properly asserts and supports the motion, the nonmoving party must come forward with evidence that establishes that a genuine issue of disputed fact exists. *Id*. at 370.

The trial court dismissed Quantum's claim asserting the right to foreclose its construction lien because Quantum failed to present evidence that it had a valid lien under the CLA. We agree.

The Legislature provided that certain persons (contractors, subcontractors, suppliers, and laborers) who improve real property will have a construction lien upon the interest of the owner or lessee who contracted for the improvement, if certain conditions apply. See MCL 570.1107; see also MCL 570.1103(3) (defining construction lien). Additionally, a contractor, subcontractor, laborer, or supplier who has a lien under the lien act must file a claim of lien against the property with the register of deeds within 90 days after "the lien claimant's last furnishing of labor or material for the improvement" or the lien ceases to exist. MCL 570.1111(1). Finally, the Legislature authorized a person with a construction lien to sue in circuit court to foreclose the lien. See MCL 570.1117; MCL 570.1118.

A suit to foreclose a construction lien is an equitable action and the circuit court must examine each claim and defense and determine the amount due to "each lien claimant." MCL 570.1118(2). A lien claimant is defined to be a person who holds a lien as provided under MCL 570.1107. See MCL 570.1103(3) (defining construction lien as a lien as described under MCL 570.1107); MCL 570.1105(2) (defining lien claimant as a person with a construction lien). It follows that a party suing to foreclose a lien must establish that he or she has a valid lien under MCL 570.1107 before he or she can sue to enforce it by foreclosure. See, e.g., *Northern Concrete Pipe, Inc v Sinacola Cos-Midwest, Inc*, 461 Mich 316, 323-324; 603 NW2d 257 (1999).

Although courts have described the 90-day deadline stated under MCL 570.1111(1) as a "period of limitations," see *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 5-6, MCL 570.1111(1) does not limit the time within which a claim may be brought. Rather, MCL 570.1111(1) identifies the point at which a lien that arose by operation of law under MCL 570.1107 ceases to exist as a matter of law absent the happening of a contingency; more specifically, MCL 570.1111(1) provides that a lien that otherwise came into existence under MCL 570.1107 will cease to exist 90 days from the date that the lien claimant last provided labor or materials for the improvement of the property, unless the lien claimant perfected the lien by filing a claim of lien with the applicable registrar of deeds. Because the period stated under MCL 570.1111(1) does not time-bar enforcement of an otherwise valid lien, it is not a period of limitations under MCR 2.111(F)(3)(a).[2]

The plaintiff in a foreclosure action bears the burden to establish that he or she had a valid lien, which includes demonstrating that he or she timely perfected the lien by filing the claim of lien required under MCL 570.1111(1). *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 554 n 22; 886 NW2d 113 (2016). Accordingly, Quantum had to present evidence as part of its prima facie case that would allow the finder of fact to conclude that it had a construction lien and timely perfected that lien before it would be entitled to foreclose the lien. See *id.*; see also *Stewart v Rudner*, 349 Mich 459, 474-475; 84 NW2d 816 (1957) (stating that a prima facie case means evidence sufficient to justify an inference of liability).

---

[2] The Legislature provided a true period of limitations under MCL 570.1117(1), which bars the enforcement of a lien in foreclosure unless the lien claimant commences the proceedings to enforce within one year after recording the claim of lien.

Quantum moved for summary disposition on its foreclosure claim in September 2020. It relied on its notice of furnishing dated February 12, 2019, claim of lien filed February 15, 2019, proof of service dated April 11, 2019,[3] and its sworn statement dated May 20, 2020 as evidence that it had the right to foreclose its lien. Quantum did not attach these documents to its motion for summary disposition, but it did attach them to its second amended complaint.

In its notice of furnishing labor or materials and its claim of lien, Quantum asserted that it last provided labor or materials for the improvement on November 20, 2018, but those assertions did not establish that Quantum had a valid lien. Quantum failed to present evidence that, if left unrebutted, established that it had a valid lien, which was an essential element of its foreclosure claim. See MCL 570.1107; *Northern Concrete Pipe*, 461 Mich at 323-324. Consequently, contrary to Quantum's contention on appeal, the trial court did not err when it denied Quantum's motion for summary disposition on the foreclosure claim. See *Barnard Mfg*, 285 Mich App at 370 (stating that, if the moving party fails to properly support its motion, the nonmoving party has no duty to respond and the trial court should deny the motion).

In response to Quantum's second motion for summary disposition, Plaza de Kaza argued that the undisputed evidence actually showed that it was entitled to summary disposition on Quantum's claim for foreclosure of its construction lien under MCR 2.116(I)(2). That rule provides that, "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party" on a motion for summary disposition. MCR 2.116(I)(2); see also *Holland v Consumers Energy Co*, 308 Mich App 675, 681-682; 866 NW2d 871 (2015) ("Summary disposition may be granted in favor of an opposing party under MCR 2.116(I)(2) if there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law.").

On appeal, Quantum argues that the trial court could not rely on MCR 2.116(I)(2) to grant summary disposition in favor of Plaza de Kaza on Quantum's claim of foreclosure because Plaza de Kaza did not support its motion with evidence of its own, but instead relied on evidence submitted by Quantum. The parties moving for and opposing a motion for summary disposition have a duty to support their positions with evidence, but they are not required to submit their own evidence or attach every piece of evidence to their motions. It is enough if the party identifies the evidence in support of his or her position and the evidence is then filed in the action or submitted by the parties. *Barnard Mfg*, 285 Mich App at 376-378, citing in relevant part MCR 2.116(G)(4) and (G)(5). As such, Plaza de Kaza could support its motion for summary disposition under MCR 2.116(I)(2) by reference to Quantum's evidence alone. In any event, Plaza de Kaza did submit evidence to support its claim that there was no dispute that the work performed after November 6, 2018, did not qualify as an improvement.

According to Plaza de Kaza, the undisputed evidence showed that the work occurring on or before November 6, 2018 constituted the last date of furnishing labor or material for the improvement. The evidence, it explained, showed that the work that occurred after November 6

---

[3] Exhibit 10 to the Second Amended Complaint contains an April 11, 2019 Proof of Service stating that Quantum's counsel served defendants' counsel the claim of lien via email on February 25, 2019 and served defendants on April 1, 2019 via certified mail.

was work to correct defects in Quantum's workmanship, which did not constitute work for the improvement under MCL 570.1111(1). Because the undisputed evidence showed that Quantum did not file a claim of lien within 90 days of November 6, 2018--the last date of furnishing labor or materials for the improvement--Quantum's lien ceased to exist as provided under MCL 570.1111(1). Plaza de Kaza argued on that basis, Quantum was not entitled to foreclose under the lien act as a matter of law.

In support of its position, Plaza de Kaza relied on testimony and evidence that Quantum sent its final invoice for the work that it performed for the project on November 6, 2018, and did not bill for any additional work. Plaza de Kaza maintained that those facts showed that the last provision of labor or materials occurred on or before November 6, 2018. Plaza de Kaza also argued that the undisputed evidence showed that the tear out and repour that Quantum performed after the November 12, 2018 meeting did not extend the 90-day deadline for filing a claim of lien. Plaza de Kaza further relied on Trimberger's deposition to establish that the work was performed to fix Quantum's defective workmanship, which did not qualify as the provision of labor or materials for an improvement under caselaw, so the work performed on November 20, 2018, did not restart the deadline for perfecting an existing claim of lien. On the basis of that evidence, it maintained that Quantum's lien ceased to exist before Quantum filed its claim of lien; accordingly, Quantum did not have a valid lien that it could foreclose.

This Court interpreted the proper meaning of MCL 570.1111(1) in *Stock Bldg Supply, LLC v Parsley Homes of Mazuchet Harbor, LLC*, 291 Mich App 403; 804 NW2d 898 (2011). In that case, the evidence showed that the contractor was hired to furnish plumbing for a building. The plumber later returned to the building to repair leaks, which he invoiced as warranty work. *Id*. at 405. The trial court eventually determined that the plumber did not have a valid lien under the CLA because he did not file a claim of lien within 90 days after his last furnishing of labor or materials for the improvement. On appeal, this Court had to determine whether the plumber's return visit to repair the leaks constituted the furnishing of labor or material for the improvement. *Id*. at 406.

Analyzing the statutory definition of improvement, as now provided under MCL 570.1104(6), and the terms of MCL 570.1111(1), this Court held that a repair to existing work can be an improvement, but that the repairs at issue were not. *Stock Bldg Supply, LLC*, 291 Mich App at 407. This Court explained:

> According to MCL 570.1111(1) and MCL 570.1104[(6)], a repair completed pursuant to a contract is an improvement, and the last furnishing of an improvement commences the 90-day filing period. Thus, for example, when a contractor is specifically hired to repair an aspect of the property, such as a nonworking door or a leaky roof, that contractor is making an improvement to the property for which the contractor is entitled to claim a lien. However, as this Court held in *Woodman v Walter*, 204 Mich App 68, 69; 514 NW2d 190 (1994), the performance of "warranty work" to correct deficiencies in work performed or defects in fixtures installed by the contractor does not constitute an improvement under the Construction Lien Act because "[i]t does not confer any value beyond the value furnished at the time the initial installation work was completed." Therefore, in such situations, "[t]he ninety-day filing period commences on the date of

completion of the original installation work and is not extended by the later performance of warranty work." *Id*. at 70. The distinguishing factor between a repair constituting an improvement to the real property, which allows for the commencement of the 90-day filing period, and warranty work, which does not allow for the commencement of a new 90-day filing period, is *whether the work in question conferred any value beyond the value furnished by the completion of the original work.* [*Stock Bldg Supply, LLC*, 291 Mich App at 407-408; emphasis added.]

In support of its motion for summary disposition under MCR 2.116(I)(2), Plaza de Kaza cited Trimberger's own testimony and Quantum's invoices to show that Quantum completed its work by November 6, 2018, and only tore out and replaced a portion of the traffic circle after Darehshori complained that the work was defective. Plaza de Kaza cited, for example, Trimberger's testimony that the work began in September 2018 and was complete within about six weeks. It noted that he stated that the last day "on the job" was November 20. Trimberger also testified that Quantum was directed to "take out and replace" a part of the curb and gutter on the traffic island after a meeting on November 12, 2018. Trimberger explained that the problems with the traffic circle occurred even before the work to replace the traffic circle. At the time of the first pour, he explained, the drain basins were not even facing the correct direction. Trimberger related that after they poured the curbs for the traffic circle for the first time there was a noticeable kink in the circle because the basin was not in the correct spot to connect with the curbing.

Plaza de Kaza also cited Darehshori's testimony that it was obvious to him that the traffic circle had not been placed in the right spot. Indeed, he stated that it did not even look like a circle. He also did not agree that the drain's poor placement justified the incorrect placement. He felt that Quantum should have either moved the drain or waited for the appropriate party to move the drain. He stated that Quantum took it upon itself to fix the drain and did not even do it properly the second time around.

Plaza de Kaza's evidence permitted an inference that the work Quantum performed after November 6, 2018, was solely to correct the traffic circle's defective placement. The evidence tended to show that, instead of correcting the improperly placed basin or waiting for it to be placed correctly, Quantum chose to disregard the plans for the traffic circle and poured the curbing and gutters in such a way as to connect the misplaced basin. That resulted in a misshapen traffic circle. Accordingly, considering only the evidence before the trial court after Plaza de Kaza's response, when Quantum tore out the relevant gutter and curbing, moved the basin, and poured a new gutter and curb, it was not adding new value to the property. Rather, Quantum "merely provided that which was originally contracted for—namely," a properly placed traffic circle. *Id*. at 409.

Quantum replied to Plaza de Kaza's response and conceded that Darehshori was unhappy with the first pour and that the parties met to discuss the problem. Quantum asserted that there was no defect in the original pour, but it did not present any evidence that the traffic circle had been poured in the correct location or consistent with the surveyor's marks. Quantum noted that Trimberger sent a text to Darehshori in which he stated that Quantum had "fixed" the traffic circle, but Quantum did not agree that the statement inferred the circle was defective after the first pour. Quantum then accused Plaza de Kaza of not having demonstrated that the first pour was defective.

Quantum's reply did not identify evidence that established a question of fact as to whether the work performed after November 6, 2018, constituted an improvement. Viewing the evidence in the light most favorable to Quantum, Quantum established that Trimberger agreed to remove and replace the traffic circle to correct the kink. His testimony failed to establish that the kink itself was not a defect in the original pour. Trimberger's newly cited testimony did not controvert Plaza de Kaza's evidence that the traffic circle was improperly placed during the first pour.

On the evidence then before the trial court, there was no dispute that the work Quantum performed after November 6, 2018, was to correct a defect in the curbing and gutters' original placement. Because there was no dispute about the reason for the work performed after November 6, 2018, the trial court did not err when it concluded that—as a matter of law—the last date of furnishing labor or materials for the improvement was on or before November 6, 2018. Moreover, because the undisputed evidence showed that Quantum failed to file its claim of lien until more than 90 days after November 6, 2018, it was also undisputed that Quantum did not have a valid lien to foreclose. See MCL 570.1101(1). Consequently, the trial court did not err when it dismissed Quantum's claim for foreclosure of a construction lien. See *Barnard Mfg*, 285 Mich App at 380-381.

On appeal, Quantum argues that this Court should estop Plaza de Kaza from asserting that the last date of furnishing labor or materials for the improvement was before November 20, 2018, on the basis of two foreign authorities: *Gooch v Hiatt*, 166 Ind App 521; 337 NE2d 585 (1975) and *Miller Monuments, Inc v Asbestos Insulating & Roofing Co*, 134 Ind App 48; 185 NE2d 533 (1962). Although foreign decisions can be persuasive authority, *Franks*, 330 Mich App at 97 n 4, those decisions do not provide any helpful guidance.

Both the foreign authorities involved a lien that had to be filed within a specified number of days after the project's completion which is substantially different from the language of the statute at issue here, which involves the termination of a lien after the passage of time from the last furnishing of labor or materials for the improvement. Additionally, the courts in those cases held that the owners caused delays in the project that precluded the owner from asserting that the project was completed at an earlier point in time. *Gooch*, 166 Ind App at 525-526; *Miller Monuments*, 134 Ind App at 52-53. That is not the case here. MCL 570.1111(1) causes a lien to cease after 90 days from the last improvement unless the lien claimant perfects his or her lien. The lien claimant is also on notice then that, under Michigan law, repairs to defective workmanship will not reset the period within which to file a claim of lien. *Stock Bldg Supply*, 291 Mich App 407-408. As such, the trial court cannot be faulted for failing to apply those foreign authorities.

The trial court did not err when it denied Quantum's motion for summary disposition of its foreclosure claim under MCR 2.116(C)(10) and instead dismissed that claim under MCR 2.116(I)(2).

### III. MOTION FOR SANCTIONS

### A. STANDARD OF REVIEW

We next address Quantum's claim that the trial court erred when it denied Quantum's motion for sanctions premised on Quantum's argument that Plaza de Kaza and Dykstra asserted

frivolous defenses and counterclaims. This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules. *Franks*, 330 Mich App at 86. This Court reviews a trial court's finding that a defense was frivolous for clear error. See *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 661-662.

## B. ANALYSIS

The court rules and statute authorize a trial court to sanction a party for asserting a claim or defense that was not well grounded in fact or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or that was brought to harass or to cause unnecessary delay or needless increase in the cost of litigation. See MCR 1.109(E)(5) and (6); MCR 2.625(A)(2); MCL 600.2591. As this Court has explained concerning MCR 1.109(E):

> An attorney has an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed. The reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good faith. A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted. [A] claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent. [*New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 91; 964 NW2d 378 (2020) (quotation marks and citations omitted), lv den 507 Mich 932 (2021).]

In its opinion and order denying Quantum's request for sanctions, the trial court first found that Dykstra did not present a frivolous defense:

> Defendant Ronald Dykstra has offered an airtight defense to sanctions. The record from the trial leaves no doubt that he was acting completely at the behest of Defendant Plaza de Kaza and its principal, Kassra Darehshori, when he was dealing with Plaintiff Quantum on the project at the heart of this case. Dykstra never paid for any work on the project, and he even went to great lengths to attempt to obtain full payment on the final invoice for Quantum when Kassra Darehshori balked at making the payment to Quantum. Accordingly, Dykstra took a perfectly reasonable position at trial by arguing that he should not be held responsible for breaching a contract with Quantum even though he enlisted Quantum to perform concrete work on the project. Thus, the Court finds without any hesitation that Dykstra did not present a "frivolous" defense before or during trial.

The record showed that Dykstra early took the position that the real parties to the contract were Plaza de Kaza and Quantum. Although there was evidence that Dykstra solicited Quantum's business, received the quote for the work, and approved the quote, which supported a finding that he entered into the contract with Quantum as a general contractor for the owner, Plaza de Kaza, there was also evidence that could have supported a finding that Dykstra served as an agent to bind Plaza de Kaza. See *Saums v Parfet*, 270 Mich 165, 171-172; 258 NW 235 (1935) (stating that the

primary function of an agent is to bring about, modify, accept, and terminate contractual obligations on a principal's behalf); *Timmerman v Bultman*, 243 Mich 344, 348-349; 220 NW 754 (1928) (discussing the law of agency involving an undisclosed principal). Notably, the parties involved did not formalize the terms of their agreement in a detailed writing that would have clearly identified the parties and their obligations. Instead, the parties formed their agreement using electronic and oral communications that included only the broad outlines of their agreement. Although the communications were sufficient to meet the minimum requirements for contract formation, the generality of the communications along with the parties' actual practices left some doubt about whether Dykstra contracted in his own name or acted as an agent for a third party such as Darehshori or Plaza de Kaza.

There was evidence, for example, that Darehshori had the final say on all work and that Darehshori caused one of his other entities to pay Quantum during the earlier stages of the project. The evidence at trial further supported a finding that Dykstra worked for Darehshori as an independent contractor performing carpentry work on his various properties and offering advice and assistance on construction projects, but that he did not act as a general contractor. Dykstra also stated that he made it clear to Quantum's owner, Trimberger, that he was acting on behalf of Darehshori and not on his own behalf. Given the evidence presented both at the summary disposition stage and trial, the trial court could easily have found that Dykstra did not contract in his own name, but instead contracted on behalf of Plaza de Kaza. Consequently, we are not left with the definite and firm conviction that the trial court clearly erred when it found that Dykstra did not assert a frivolous defense when he denied that he was a party to the contract with Quantum. See *Kitchen*, 465 Mich at 661-662.

Turning to the defense by Plaza de Kaza, the trial court noted that it was a closer question as to whether Plaza de Kaza engaged in frivolous litigation. The court explained that the text messages exchanged between Trimberger and Darehshori strongly suggested that Darehshori refused to pay Quantum out of animosity.[4] The court also felt that Plaza de Kaza's position on the cost to repair the traffic circle was "murky" and possibly "misleading." The trial court agreed that Darehshori was justified in his concerns after the first pour but stated that the evidence showed that Darehshori agreed to the corrective measures that Quantum took after the meeting on November 12, 2018. For that reason, the court wrote, Quantum's position that it was entitled to payment appeared undisputable after the second pour, and the court allowed the matter to go to

---

[4] There was strong evidence that Darehshori harbored animosity for Trimberger, which played a role in his decision to refuse payment. Indeed, the evidence tended to show that both Darehshori and Trimberger acted out of anger during the period leading up to the lawsuit. That evidence might have supported a finding that specific actions taken by the parties during the litigation were taken for improper purposes within the meaning of MCR 1.109(E)(5)(c) and MCL 600.2591(3)(a)(*i*), but that evidence was not so overwhelming that it could be said that the trial court clearly erred when it found that Plaza de Kaza did not assert its claims and defenses for improper purposes. See *Kitchen*, 465 Mich at 661-662.

trial in part on the representation that Plaza de Kaza would present evidence that the cost to repair the traffic circle was substantial, which it never did.

Despite these observations, the trial court found that Plaza de Kaza's counterclaims and defense were not frivolous. The court found that Quantum's decision to sue for foreclosure of a construction lien dramatically increased the stakes and compelled Plaza de Kaza to defend vigorously during the early stages to defeat the lien claim. The court also found it compelling that, after Plaza de Kaza successfully defeated the lien claim, it made an offer of judgment, which, although untimely, would have ended the litigation and saved the attorney fees associated with proceeding to trial. The "most plausible explanation for that strange decision," the trial court observed after Quantum refused the offer of judgment, was to preserve its chance to get attorney fees, which had become a recurring problem in commercial litigation, such that litigants endlessly contest their cases "in pursuit of the spoils of fee-shifting provisions in contracts or statutes."

Contrary to Quantum's contentions on appeal, the trial court did not deny Quantum's motion for sanctions on the basis of Quantum's decision to refuse Plaza de Kaza's offer of judgment. The trial court discussed the offer of judgment in the context of trying to explain why Plaza de Kaza had to rely on a weak argument for offset or recoupment at trial. The court explained that the parties refused to settle and Quantum refused an offer of judgment because it hoped to recover its attorney fees. Indeed, the trial court properly observed that "the parties wound up trying a case that made no economic sense for either side to try." Nevertheless, the trial court properly found that Plaza de Kaza's defenses and counterclaims were not frivolous.[5]

The record supported the trial court's finding that Plaza de Kaza's counterclaims and defenses had some plausible basis in fact and law. As the trial court aptly noted, Plaza de Kaza successfully defeated Quantum's claim for foreclosure of a construction lien, which precludes a finding that its defense was meritless.[6] Moreover, Plaza de Kaza's remaining claims and defenses involved whether Quantum was entitled to the full balance on its final invoice or whether that amount should be subject to an offset or damages in recoupment for poor workmanship. It is well settled that a party defending a breach-of-contract claim may counter or defend by seeking recoupment, *Mudge v Macomb Co*, 458 Mich 87, 106-107; 580 NW2d 845 (1998), and the evidence showed that there was a colorable basis for concluding that Quantum's workmanship was less than ideal. Although the trial court ultimately entered a verdict in Quantum's favor without

---

[5] The trial court wrote that "several important factors militate against an award of sanctions predicated upon a finding that Defendant Plaza de Kaza's counterclaim and its defense to Plaintiff Quantum's claim of unjust enrichment were 'frivolous'." The court also stated that there was no "factual or legal justification to saddle either defendant with the attorney fees incurred by Quantum in the course of this protracted litigation."

[6] Quantum suggests that Plaza de Kaza's failure to earlier raise its defense to the construction lien was evidence that Plaza de Kaza did not have a meritorious defense. Plaza de Kaza contested whether Quantum's lien was valid from the start of the case. Quantum had the burden to establish that its lien was valid and Plaza de Kaza had every right to hold Quantum to that burden.

any offsets or recoupment, that alone did not show that the defenses were meritless.  See *Kitchen*, 465 Mich at 662.

Quantum has not demonstrated that the trial court clearly erred when it found that Plaza de Kaza and Dykstra did not assert frivolous defenses or counterclaims.  *Id*. at 661-662.

## IV.  CONCLUSION

Because Quantum has not shown that the trial court committed any errors that warrant relief, we affirm the trial court's findings

Affirmed. As the prevailing parties, Plaza de Kaza and Dykstra may tax their costs.  See MCR 7.219(A).

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney